Adam Lamb, Respondent, v. Michael Connolly, Appellant.

The Same, Respondent, v. William Lancy, Appellant.

The act of 1883 (Chap. 114, Laws of 1883), which provides for the settlement and collection of arrearages of unpaid taxes in the city of Brooklyn, does not provide for any apportionment violative of any constitutional right, as its object was not to make original assessments, but to provide for the adjustment of those previously made or attempted to be made, and under it the board of assessors could levy no new taxes, but simply adjust, upon a fair basis, those already made.

It was within the legislative authority to confer this power upon said board, and the power and the manner of its exercise are effectually conferred by the act.

While a notice to property owners of the adjustments made, was necessary, the kind of notice and the mode of giving it were matters of legislative discretion, and a sufficient notice is prescribed in the act.

*Stuart* v. *Palmer* (74 N. Y. 183); *Eaton* v. *Reed* (MS. Op. Mason, J., Ct. Appeals), distinguished.

In an action of ejectment brought by a purchaser of a lot sold for non-payment of taxes, etc., as adjusted under said act, it appeared that there was in arrear charges for water-rates amounting to about $20. It was claimed by plaintiff that the water-rates were invalid as liens upon the land, for the reason that plaintiff's lot was vacant, and that the provision of the statute providing for such liens upon vacant lots (§ 24, chap. 396, Laws of 1859) was void. It appeared also that the amount in arrear was reduced by the board more than the amount of the water-rates. *Held*, that the question raised was not available to defendant; that in view of the presumption given by the statute that the purchaser took a good title by his deed, it could not be assumed without evidence to that effect that the reduced sum embraced any amount of water-rates.

(Argued October 24, 1890; decided December 2, 1890.)

Appeal from judgments of the General Term of the City Court of Brooklyn, entered upon orders made May 22, 1888, which affirmed judgments in favor of plaintiff entered upon decisions of the court on trial without a jury.

The nature of the actions and the facts, so far as material, are stated in the opinion.

*W. E. Osborn* for appellant. Chapter 114 of the Laws of 1883 is unconstitutional, for the reason that it does not provide for any apportionment of the taxes, assessments or water-rates to be levied thereunder. (*Stuart* v. *Palmer*, 74 N. Y. 183, 188, 189; *Spencer* v. *Merchant*, 100 id. 585; 125 U. S. 345.) Under the provisions of said act the assessor's notice to owners in arrears, provided for by the first section of said act, should have designated the property intended to be affected thereby by its block and lot number on the assessment map of the ward in which the property deemed to be in arrears was located. (Laws of 1883, chap. 114, §§ 1–3.) If, however, the notice of the board of assessors to owners in arrears is held to be a full, or substantial compliance with the act, then the law is unconstitutional, under the Constitution of the United States and of the state of New York, because it is an attempt to charge, or take property, and to deprive the plaintiff of property, without due process of law. (*Eastman* v. *Little*, 5 N. H. 290; 4 Pet. 350; Cooley on Const. Lim. 432; *Dartmouth College* v. *Woodward*, 4 Wheat. 519; *Browell* v. *Coleman*, 11 Mun. 78; *Sharpe* v. *Johnson*, 4 Hill, 92, 93; *Brevoort* v. *City of Brooklyn*, 89 N. Y. 128; *Remsen* v. *Wheeler*, 105 id. 573.)

*John T. Barnard* for respondent. Chapter 114 of the Laws of 1883, is constitutional. (*People ex rel.* v. *Mayor, etc.*, 4 N. Y. 49; *Town of Guilford* v. *Bd. of Suprs.*, 13 id. 143; *Brewster* v. *City of Syracuse*, 19 id. 116; *Howell* v. *City of Buffalo*, 37 id. 267.) It was not necessary for the board of assessors to give notice to any designated person or persons other than such as owned land or had an interest in land in arrears for taxes. (*Stuart* v. *Palmer*, 74 N. Y. 183.) The legislature has power to provide that the whole or any portion of lands may be sold in fee or otherwise for taxes or other charges made upon such lands by the laws of the state. (*In re Trustees, etc.*, 31 N. Y. 574; *Colman* v. *Shattuck*, 62 id. 348.)

BRADLEY, J. The actions are ejectment, brought to recover the possession of certain lands in the city of Brooklyn, which

had been sold pursuant to the provisions of chapter 114, Laws of 1883, concerning the settlement and collection of arrearages of unpaid taxes, etc., in that city, and purchased by the plaintiff. And against the recovery it is contended that such statute is unconstitutional for the reason that it failed to provide for any apportionment of the taxes, assessments or water-rates to be levied, or for any sufficient notice to the owners of the property to be affected by the proceedings taken under it.    The object and effect of the act of 1883 was not to make original assessments, but to provide for the adjustment of those which had been made or attempted to be made prior to July 1, 1882, and remained unpaid and in arrears.    They had accumulated to an amount exceeding ten millions of dollars, and the validity of some of them had been questioned.    The purpose of the act was to determine as to each parcel of land so affected, how much of such " arrearages ought in the way of tax, assessments and water-rates in fairness and justice " to be assessed, charged and collected from the land, without regard to any supposed want of jurisdiction, irregularity, or defect in any of the proceedings had for the levying or confirming any of the assessments or water-rates in arrears.    And with that view the board of assessors of the city were directed to, within thirty days after the passage of the act, publish in the manner provided a general notice requiring the owners of all land in the city affected by any arrearage of taxes, assessments or water-rates, and all other persons having any interest in or lien upon such lands, to present in writing to the board within ninety days after the passage of the act their objections to any such tax, assessment or water-rate why such arrearages should be reduced or any part of them remitted.    And whoever should so furnish and serve such statement and objection, if he demanded a hearing in a notice indorsed upon such statement designating the name and place of business or residence of a person upon whom notice might be served, should be heard before the board, and for that purpose have notice of hearing, to be served in the manner directed.    It was also provided that the board should keep a record of its

proceedings, in which should be entered its determination as to the amount to be charged and assessed upon each parcel of land, designating the same by the block and lot numbers on the assessment maps in the office of the assessors, and certify the amount to the registrar of arrears and to the comptroller of the city, and that such determination should be conclusive; and the amount so determined in each case and certified should thereupon become and be a valid tax, assessment and lien upon the lands so designated in lieu of all outstanding claims of the city for arrearages of taxes, assessments or water-rates levied or confirmed or attempted to be levied or confirmed prior to July 1, 1882. There was a further provision for the collection by the registrar of arrears of the amount of the tax, assessment and lien, although he was not required to make any demand of payment; but if unpaid within twelve months from the time of filing such certificate, he should sell the land at public auction, after publishing as directed, an advertisement of the sale, in which should be included " a designation of the time and place of sale and of the ward or wards in which the property then and there to be sold is situated, and shall state that further particulars of the property to be sold may be obtained at the said registrar's office, and it shall not be necessary in said advertisement to include any further particulars of the property to be sold." And from and after the first publication of the advertisement it was made the duty of the registrar to deliver to any applicant at his office a list of all the parcels of land intended to be included in the sale so advertised. On the receipt by him of the purchase-money on any sale made by him, the registrar was directed to deliver to the purchaser a certificate of sale; and after the expiration of one year from the time of the service of notice of sale by the purchaser in the manner provided, upon any person having an estate in or any mortgage of the land so sold, whose estate or lien appeared of record, unless in the meantime redeemed, he should execute and deliver to the purchaser a deed of the lands, who should thereby take title in fee simple absolute, of which the deed should be presumptive evidence.

The plaintiff, as purchaser of the premises in question, had the relation to them given by such a deed made to him. The apportionment was made pursuant to other statutes existing in the period of nearly twenty years in which the assessments were made. And the irregularity to which our attention has been called, and so far as it appears by the judicial history on the subject, was in the defective verification of the assessment-rolls by the affidavits of the assessors. It was finally determined in 1882 that such defective verification rendered the assessments invalid (*Brevoort* v. *City of Brooklyn*, 89 N. Y. 128); and following it in June of that year, an act was passed to confirm and legalize taxes levied or attempted to be levied since the year 1861, and the validity of which was affected by such defect. (Laws of 1882, chap. 363.) The act was effectual for such purpose, and the taxes and assessments thus defectively levied were legalized. (*In re Clementi* v. *Jackson*, 92 N. Y. 291.) And the act of 1883 was passed to fully accomplish it without unnecessary prejudice to the owners of property upon which those in arrears had been levied legally or otherwise prior to July 1, 1882. Under it the board of assessors could levy no new taxes, nor could they increase the amount of those so levied. The purpose in view was to reduce them in cases where in "fairness and justice" the proper adjustment required it. And it may be assumed that many had paid the taxes upon their property, levied during the time that those in arrear had accrued. That it was within the legislative authority to devolve upon the board of assessors the power given them by the act of 1883; and that the board might lawfully exercise it has been held in *Tyrell* v. *Wheeler* (33 N. Y. S. R. 404; 25 N. E. Rep. 329). It is not seen that there was any apportionment provided for in the act violative of any constitutional right. It was not within its contemplation or purpose to levy taxes for city charges upon a portion only, or less than the whole, of the taxable property in the city, nor was such its legitimate effect. But by it provision was made to deal with and adjust. upon a fair basis for collection, taxes in arrear only. Those

assessed and levied upon other lands during the period referred to had been paid. The burden of the taxes so in arrear was thus properly as well as equitably upon the property which had escaped the payment of those before then levied and attempted to be levied upon it. This was within the taxing power of the state. And no good reason appears why it and the manner of its exercise were not effectually conferred on the municipal corporation. (*Howell* v. *City of Buffalo*, 37 N. Y. 267; *People ex rel. Griffin* v. *Mayor, etc.*, 4 id. 419; *Brewster* v. *City of Syracuse*, 19 id. 116; *Spencer* v. *Merchant*, 100 id. 585; 125 U. S. 345.)

The preliminary notice given by the board of assessors was in compliance with the provision of the statute before mentioned on the subject. It called attention to the lands in the city affected by arrearages of taxes, assessments and water-rates, and called upon the owners and all persons having any interest in or liens upon them to make their objections to any taxes, etc., so in arrears. It also referred to the act under which the proceedings were taken, by the provision of which such owners and persons so interested were given an opportunity to be heard upon the subject. And in the act was defined what were taxes, assessments and water-rates in arrears. That was a notice to all persons who were brought within it by the statute. They were those who owned and had such interest in any portion of the lands designated in a particular manner as a class. There was, therefore, not a want of notice. And the kind of notice and the mode of giving it were a matter of legislative judgment and direction. While a notice may have been essential to the validity of the proceedings, it cannot be said that the legislature failed to prescribe a sufficient notice. The difficulty in *Stuart* v. *Palmer* (74 N. Y. 183) was that no notice of the assessment was provided for, and the owner of the property was given no opportunity to be heard; and the execution of the statute would have resulted in the taking of property without due process of law. But it was there held that the legislature might prescribe the kind of notice and the mode of giving it. In

*Eaton.* v. *Reed* (MS. opinion of MASON, J., Court of Appeals)
there was not only practically no notice, but that given was
not such as the statute required.    And the contention to
the latter effect in the present case is founded upon the fol-
lowing provision of section three :  " It shall not be necessary
in the said list, nor in the certificate of the said board of
assessors hereinbefore mentioned, nor in any notice required
to be given or published by any of the provisions of this act,
to state the name of the owner of the premises affected, nor
describe the premises affected otherwise than by the said block
and lot number on the map of the ward."    The list there
referred to is that before mentioned, and the certificate is that
which the board of assessors were required to furnish to the
registrar of arrears of the amount of the tax, assessment and
lien as determined by them in respect to and charged upon
each and every parcel of land so affected.    These are men-
tioned in the same section as and preceding the provisions just
quoted.    There is no question about the designation in such
list and certificate of the block and lot number of each parcel
of land included in them.    And while they might, with much
propriety, be embraced in such preliminary notice, the statute
does not, in terms or by reasonable construction, require it.
The notice as prescribed by the statute is a " general " one to
all owners, and others having any interest in or lien upon lands
in the city affected by any arrearages of taxes, etc.    And this
provision of the statute relating to that notice seems to be
complete in respect to what is essentially included in it, and
the other provision relating to the use of the name of the
owner or the block and lot number of premises affected, is not
a requirement applicable to such notice.    In the present case
the notice of the board of assessors, as required by the statute
and given, did designate in a manner the lands so affected.
By it the assessors acquired jurisdiction of the proceedings.
And in the registrar's advertisement of sale designating the
ward or wards in which it was situated, the persons interested
were advised where they could obtain the particulars of the
property to be sold.    And all persons having an estate or

mortgage appearing of record in or upon the land sold, were entitled to notice of the sale, and a year to redeem before a deed could be taken by the purchaser. There seems to be no defect in the provisions of the act of 1883, nor any want of observance of them in the proceedings had, which resulted in the sale of the land in question, essential to the validity of the deed given by the registrar of arrears to the plaintiff.

In the *Connolly* case there were in arrear, aside from taxes and assessments, as such, charges for water-rates amounting to less than twenty dollars, and the point is made that those water-rates were invalid as liens upon the property, for the reason that the statute providing for assessment of such rates upon vacant lots is void, as it gives the owner of the premises no opportunity to be heard upon the subject. (Laws of 1859, ch. 396, § 24.) It was so held in *Remsen* v. *Wheeler* (105 N. Y. 573). Without considering whether this property may or not be treated as then vacant, and the effect upon it if not so, we think the question raised is not available to the defendant upon the facts presented by the record before us. The taxes, assessments and water-rates in arrear in this case amounted together to $771.43, and by the action and determination of the board of assessors there was of that amount cancelled or taken from it $403.43, leaving as the amount for collection $368. In view of the presumption given by the statute that the purchaser took a good title by the deed to him, it cannot be assumed without evidence to that effect that such reduced sum embraced any amount of water-rates. And no such fact was found by the trial court, nor was there any request to specifically so find. Nor is the question raised by any exception otherwise than in its bearing upon the constitutional validity of the act of 1883 as a whole. That view is not supported.

No other question requires consideration.

·The judgment should be affirmed.

All concur.

Judgment affirmed.