CENTRAL SAVINGS BANK IN THE CITY OF NEW YORK et al., Appellants, v. CITY OF NEW YORK et al., Respondents.

Argued October 17, 1938; decided December 6, 1938.

*Jesse Knight, John H. Willenbrok, Kenneth N. La Vine, Robert C. Fulton, Jr., Edwin A. Berkery* and *Joseph H.*

*Praetz* for Central Savings Bank in the City of New York et al., appellants. The charge imposed by chapter 353 of the Laws of 1937 is not a tax and the resulting lien is not a tax lien. (*City of Rochester* v. *Bloss,* 185 N. Y. 42; *City of New York* v. *McLean,* 170 N. Y. 374; *Colby* v. *City of Medford,* 85 Ore. 525; *Matter of Van Antwerp,* 56 N. Y. 261; *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324; *Davis* v. *McLean County,* 52 N. D. 857; *Yeatman* v. *King,* 2 N. D. 421; *Walker* v. *Jameson,* 140 Ind. 591; *United States* v. *Butler,* 297 U. S. 1; *Carter* v. *Carter Coal Co.,* 298 U. S. 238; *United States* v. *LaFranca,* 282 U. S. 568; *Head Money Cases,* 112 U. S. 580.) The lien is in effect based upon contract, express or implied, between the owner and the municipality. (*Carson* v. *Brockton Sewerage Comm.,* 182 U. S. 398; *Matter of Long Island R. R. Co.* v. *Hylan,* 240 N. Y. 199.) The lien is merely an incident of the regulation of tenement houses. (*Adamec* v. *Post,* 273 N. Y. 250; *Tenement House Dept.* v. *Moeschen,* 179 N. Y. 325; 203 U. S. 583; *Head Money Cases,* 112 U. S. 580; *Morgan's S. S. Co.* v. *Louisiana,* 118 U. S. 455; *City of Buffalo* v. *Stevenson,* 207 N. Y. 258.) The law in attemping to create liens on property with priority over existing mortgages impairs the obligations of contracts and is unconstitutional. (*Worthen Co.* v. *Kavanaugh,* 295 U. S. 56; *Green* v. *Biddle,* 8 Wheat. 1; *Walker* v. *Whitehead,* 16 Wall. 314; *McCracken* v. *Hayward,* 2 How. 608; *Wolff* v. *New Orleans,* 103 U. S. 358; *Worthen Co.* v. *Thomas,* 292 U. S. 426; *Davis* v. *McLean County,* 52 N. D. 857; *Yeatman* v. *King,* 2 N. D. 421; *National Bank of Commerce* v. *Jones,* 18 Okla. 555.) That the Multiple Dwelling Law (Cons. Laws, ch. 61-A) purports to be enacted in the exercise of the police power does not justify a permanent impairment of the obligations of outstanding contracts. (*Worthen Co.* v. *Kavanaugh,* 295 U. S. 56; *Worthen Co.* v. *Thomas,* 292 U. S. 426; *Judd* v. *Board of Education,* 278 N. Y. 200; *Beaver County Bldg. & Loan Assn.* v. *Winowich,* 323 Penn. St. 483; *Hoard* v.

*Luther*, 251 App. Div. 692; *Weisel* v. *Hagdahl Realty Co.*, 241 App. Div. 314; *First Trust Co.* v. *Smith*, 277 N. W. Rep. 762; *Royster Guano Co.* v. *Virginia*, 253 U. S. 412.) The statute unlawfully takes property without due process of law. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Matter of Trustees of Union College*, 129 N. Y. 308; *Matter of City of New York [Grand Boulevard]*, 212 N. Y. 538; *Remsen* v. *Wheeler*, 105 N. Y. 573; *Matter of De Peyster*, 80 N. Y. 565; *Londoner* v. *Denver*, 210 U. S. 373; *Southern Ry. Co.* v. *Virginia*, 290 U. S. 190.)

*William I. Hart* and *Joseph R. Truesdale* for Dry Dock Savings Institution et al., appellants. Subdivisions 1 and 6 of section 309 of the Multiple Dwelling Law contravene section 10 of article VIII of the Constitution of the State of New York. (*Weismer* v. *Village of Douglas*, 64 N. Y. 91; *Fox* v. *Mohawk & H. R. Humane Society*, 165 N. Y. 517; *Pocantico Water Works Co.* v. *Bird*, 130 N. Y. 249; *Smith* v. *Smythe*, 197 N. Y. 457; *Syracuse S. R. R. Co.* v. *City of Syracuse*, 113 Misc. Rep. 28; *United States* v. *Cohen*, 268 Fed. Rep. 420; *Chicago, M. & St. P. R. R. Co.* v. *Wisconsin*, 238 U. S. 491; *Khoury* v. *County of Saratoga*; 243 App. Div. 195; 267 N. Y. 384; *Melker* v. *City of New York*, 190 N. Y. 481; *Eckhardt* v. *Buffalo*, 19 App. Div. 1; 156 N. Y. 658; *Health Dept.* v. *Dassori*, 21 App. Div. 348; *Lawton* v. *Steele*, 119 N. Y. 226; *Huff* v. *City of New York*, 202 App. Div. 425; *Brooklyn City R. R. Co.* v. *Whalen*, 191 App. Div. 737; 229 N. Y. 570; *Matter of New York City Housing Authority* v. *Muller*, 270 N. Y. 333.) Subdivisions 1 and 6 of section 309 of the Multiple Dwelling Law violate the provisions of section 6 of article I and section 1 of article I of the Constitution of the State of New York, and section 1 of article XIV of the Constitution of the United States. (*Matter of City of New York*, 190 N. Y. 350; *People ex rel. Phillips* v. *Raynes*, 136 App. Div. 417; *Stuart* v. *Palmer*, 74 N. Y. 183; *Gautier* v. *Ditmar*, 204 N. Y. 20; *People*

*ex rel. Schick* v. *Marvin*, 249 App. Div. 293; 275 N. Y. 587; *Eckhardt* v. *Buffalo*, 19 App. Div. 1; 156 N. Y. 658; *Health Dept.* v. *Dassori*, 21 App. Div. 348; *Lawton* v. *Steele*, 119 N. Y. 226; *Babcock* v. *City of Buffalo*, 56 N. Y. 268; *Ely* v. *Supervisors*, 36 N. Y. 297; *Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178.)

*William C. Chanler, Corporation Counsel* (*William S. Gaud, Jr.*, of counsel), for respondents. The city had full power to direct the owners of the buildings to make the repairs themselves. (*Adler* v. *Deegan*, 251 N. Y. 467; *Adamec* v. *Post*, 273 N. Y. 250; *Tenement House Dept.* v. *Moeschen*, 179 N. Y. 325; 203 U. S. 583; *Cockcroft* v. *Mitchell*, 187 App. Div. 189; 230 N. Y. 630.) The grant of power to the city to take upon itself the execution of orders that are not complied with and to recoup the cost of doing so through a prior lien upon the property improved, is a proper exercise of the po.ice power. (*Block* v. *Hirsh*, 256 U. S. 135; *Matter of New York Housing Authority* v. *Muller*, 270 N. Y. 333; *Lawton* v. *Steele*, 119 N. Y. 226; 152 U. S. 133; *Swanberg* v. *City of New York*, 123 App. Div. 774; *City Council* v. *Werner*, 38 S. C. 448; *Easby* v. *City of Philadelphia*, 67 Penn. St. 337; *People ex rel. Board of Commissioners* v. *Banks*, 67 N. Y. 568; *Board of Black River Regulating District* v. *Ogsbury*, 203 App. Div. 43; 235 N. Y. 600.) The imposition of liens under the statute infringes no constitutional rights of the owners of old-law tenements, (*Levy Leasing Co.* v. *Siegel*, 258 U. S. 242; *Block* v. *Hirsh*, 256 U. S. 135; *Marcus Brown Holding Co.* v. *Feldman*. 256 U. S. 170; *People ex rel. Durham Realty Corp.* v. *LaFetra*, 230 N. Y. 429; *Guttag* v. *Shatskin*, 230 N. Y. 647; *Mugler* v. *Kansas*, 123 U. S. 623; *Hadacheck* v. *Sebastian*, 239 U. S. 394; *Reinman* v. *City of Little Rock*, 237 U. S. 171; *People* v. *Wolfe*, 272 N. Y. 608; *Nickerson* v. *Boston*, 131 Mass. 308; *Lawton* v. *Steele*, 152 U. S. 133; *North American Storage Co.* v. *Chicago*, 211 U. S. 306;

*People ex rel. Copcutt* v. *Board of Health,* 140 N. Y. 1.) Giving the city's lien priority over pre-existing mortgages does not impair the obligation of contracts in violation of section 10 of article I of the Federal Constitution. (*Home Building Loan Assn.* v. *Blaisdell,* 290 U. S. 398; *Norman* v. *Baltimore & Ohio R. R. Co.,* 294 U. S. 240; *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349; *People ex rel. Durham Realty Corp.* v. *LaFetra,* 230 N. Y. 429; *Loring* v. *Commissioner of Public Works,* 264 Mass. 460; *Richmond Mortgage & Loan Corp.* v. *Wachovia Bank & Trust Co.,* 300 U. S. 124; *Parker Bros.* v. *Fagan,* 68 Fed. Rep. [2d] 616; 292 U. S. 638; *Pennslyvania Canal Co.* v. *Brown,* 235 Fed. Rep. 669.) The prior lien law is likewise a proper exercise of the taxing power. (*Genet* v. *City of Brooklyn,* 99 N. Y. 296; *Matter of Zborowski,* 68 N. Y. 88; *Gordon* v. *Cornes,* 47 N. Y. 608; *People ex rel. Crowell* v. *Lawrence,* 41 N. Y. 137; *People ex rel. Griffin* v. *Mayor of Brooklyn,* 4 N. Y. 419; *Withnell* v. *Ruecking Construction Co.,* 249 U. S. 63; *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112; *Spencer* v. *Merchant,* 100 N. Y. 585; 125 U. S. 345; *People ex rel. Scott* v. *Pitt,* 169 N. Y. 521; *N. Y. C. & H. R. R. R. Co.* v. *City of Rochester,* 129 App. Div. 805; 198 N. Y. 570; *Crayton* v. *Larabee,* 220 N. Y. 493.)

CRANE, Ch. J.  The constitutionality of the Multiple Dwelling Law (Cons. Laws, ch. 61-A) (Laws of 1929, ch. 713, as amd.) has been raised on appeal to this court before.  In *Adler* v. *Deegan* (251 N. Y. 467) the law was challenged because its manner of passage was in violation of the Home Rule Amendment to the Constitution (Art. XII, § 2).  We held that the law did not relate solely to the property, affairs or government of cities, and was properly adopted by a majority vote of the Legislature; in other words, as stated in the opinion, " Reason as well as authority justifies a conclusion that these health measures must be a matter of State concern " (p. 477).

Later, in *Adamec* v. *Post* (273 N. Y. 250), we were called upon to determine the constitutionality of the law and its amendments as applicable to buildings erected before 1901, or existing old law tenement houses. We there held that if the owner desired to continue the building as a tenement house or multiple dwelling, he would be obliged to make those changes in the structure found necessary for the public health and welfare. If the owner refused to make the alterations, the city was authorized to make them, the cost becoming a lien upon the property, subject to taxes, assessments and prior mortgages. We said: " When a building used as a dwelling house is unfit for that use and a source of danger to the community the Legislature in order to promote the general welfare may require its alteration or require that its use for a purpose which injures the public be discontinued; and, subject to reasonable limitation, the Legislature may determine what alterations should be required and what conditions may constitute a menace to the public welfare and call for remedy" (p. 260). The owner had the choice of avoiding this expenditure and the consequent lien by discontinuing the use of his building for a tenement house. He could close it up or turn it to some other means of income.

We are now called upon to determine whether this law be constitutional as applied to prior mortgagees who have no such choice but who must subordinate the lien of their mortgages at the will of the city and the owner, having no control or say in the matter whatever. This requires us to consider the provisions of the amendment made by chapter 353 of the Laws of 1937. Section 309, subdivision 1, now provides that if the Department of Housing and Buildings elects to exercise its power to compel the owner to repair and improve his building, pursuant to subdivision 6 of this section, it shall serve a copy of the order on any mortgagee or other incumbrancer of record. Subdivision 6 is the new section providing for the establishment and

maintenance of a revolving fund to be known and designated by the term, " Old-Law Tenement Assessment Fund," which shall consist of all moneys collected by the city on account of assessments made, pursuant to the subdivision; all moneys received from the sale of old-law tenement assessment bonds; sums appropriated in the budget or raised by taxation, and all other sums required to be paid into the fund. Upon the establishment of such fund, the moneys may be used to defray the expenses incurred in the execution of the orders issued by the Department of Housing and Buildings in making improvements, pursuant to such orders.

This new subdivision 6 of section 309 by paragraph (g) enacts: " The board of assessors, or other body of such city charged with the making of assessments for local improvements * * * shall, upon the certificate of the department charged with the enforcement of this chapter, assess the amount of such expenses against the property upon and with respect to which the work was performed, which property shall be deemed benefited to the extent of such expenses. Such certificate shall be accompanied by a copy of the order and notice served pursuant to subdivision one of this section and a copy of the affidavit executed and filed pursuant to subdivision four of this section, and such certificate, when accompanied by such papers, *shall be binding and conclusive on such board or body*. Except as in this subdivision otherwise provided, *subsequent* proceedings with regard to such assessments shall in all respect be as prescribed by the charter, local laws or ordinances of such city. Confirmation of such assessments by such board of assessors, or other like body, exercising original power of confirmation, shall be deemed final. Every such assessment, after confirmation, shall be a lien or charge upon the property or premises in respect to which the same may have been made, which lien shall have priority over all other liens and encumbrances, including mort-

gages, whether or not recorded previously to the levying of such assessment, * * *." Assessments remaining unpaid for ninety days carry seven per cent interest.

Chapter 12 of the Administrative Code for the City of New York (Laws of 1937, ch. 929), relating to assessable improvements, even if applicable to such an assessment as is here contemplated, could not touch the reasonableness or the amount of the assessment, as the certificate and affidavit referred to are to be binding and conclusive on the assessing board or body. The local laws and ordinances apply except as to this provision of finality.

The other provisions of the Multiple Dwelling Law, section 309, relating to the duties and privileges of the owner, remain as they were before the passage of this amendment, chapter 353 of the Laws of 1937. The Department of Housing and Buildings may order improvements which it deems necessary to be made in old law tenement buildings. If the order is not complied with within twenty-one days after service, the department may make the changes through its agents, employees or contractors; that is, it may in its discretion let out contracts for the repairs to be done, pursuant to the section and the charter. As against the owner, the department shall have a lien for all these expenses, which lien shall have priority over all other liens and incumbrances, except taxes and assessments and mortgages recorded previously to the existence of such lien. Now by the amendment the mortgagee may be brought in by notice and, as stated above, the lien may even have priority over his mortgage.

Subdivision 4 of section 309 has reference to the affidavit which is to be made regarding the expenses, in these words: " When the said department shall, through its own officers, and men and means, have executed or so far executed as said department may require, any order, the expense of such execution, giving in general terms the items of such expense and the date of execution, shall be stated in an affidavit and the same shall be filed among

the records of said department with the order so executed; * * *."

This is the affidavit referred to in paragraph (g) of subdivision 6, which becomes binding and conclusive on the assessing board even though it is not stated by whom the affidavit must be made.

A brief summary of these provisions may be given as follows: The Department of Housing and Buildings may order improvements and alterations to be made in old law tenement houses. If the owner does not desire to comply with the law and incur the expense, he can close up the building or devote it to other uses. If he desires to continue the tenement, he may make the alterations at his own expense or permit the city to do it for him. In making these determinations the mortgagee is not consulted. The mortgagee not being in possession, has no option whatever, but must sit idly by while the department or the owner proceeds to diminish the value of his lien. The work being done, and the record and affidavit being filed with the Board of Assessors, as required, the expenses become a lien upon the property ahead of his mortgage, all of which is final as to him. The law affords him no opportunity to be heard as to the reasonableness of the proceeding or the expenses. His property is thus taken without due process of law (State Const. art. I, § 6), and the obligation of his contract with the mortgagor impaired, contrary to the provisions of article I, section 10, of the United States Constitution.

The seriousness of this situation is apparent from the agreed statement of facts, upon which this case comes before the courts. The plaintiffs, Central Savings Bank, the Emigrant Industrial Savings Bank, and Dry Dock Savings Institution are domestic banking corporations. The Central is the owner and holder of approximately 1,700 mortgages on old law tenement houses in New York city; the Emigrant Industrial, of approximately 1,900

mortgages on such houses, and the Dry Dock Savings Institution, the owner and holder of approximately 900 mortgages.

The Central Savings Bank is the owner and holder of a mortgage covering 45 First avenue, in the borough of Manhattan, dated March 24, 1927. The amount is $20,000, with interest due from November 1, 1935, amounting to $2,250. It is neither in possession nor control of the premises, nor does it have a present right to the possession or control thereof. Erected on the premises is a multiple dwelling, commonly known as an old law tenement house, comprising separate apartments — the residence or home of more than three families living independently of each other. The mortgage is a first lien. Violations are filed against the property for failure to comply with the requirements of the Multiple Dwelling Law.

On or about May 2, 1938, the Department of Housing and Buildings of the City of New York posted upon the buildings, and sent to the owner and mortgagee an order directing the removal of the violations, and a notice stating that, unless the orders were complied with within twenty-one days after the mailing thereof, the Department of Housing and Buildings might exercise the powers conferred upon it by subdivision 6 of section 309 of the Multiple Dwelling Law. It is agreed that the twenty-one days have expired and none of the orders have been complied with, so that the Department of Housing and Buildings intends to make the repairs and necessary alterations, and intends to have the cost and expenses, amounting to $1,621, made liens upon the premises, having priority over the mortgage. Similar allegations are made regarding a mortgage held by each one of the other two plaintiffs. This agreed statement is evidently to present to the court test cases which will affect the 4,500 mortgages held by the plaintiffs. The sole question submitted by the agreed statement is whether section 309 of the Multiple Dwelling

Law, as amended by chapter 353 of the Laws of 1937, is constitutional within the limitations of the Constitution of the United States and the State of New York as it applies to these mortgagee plaintiffs.

By subdivision 6 of section 235 of the Banking Law (Cons. Laws, ch. 2), savings banks may invest to an amount not exceeding 60 per centum of the appraised value of real property. These plaintiffs are presumed to have complied with this law, and have invested their money by contract through bond and mortgage in these respective properties as first liens having an equity sufficient to secure the savings of their depositors. Now, in the discretion of the Department of Housing and Buildings, alterations may be made in these buildings by arrangement between the department and the owner, or without his consent, whereby substantial liens may come in ahead of the mortgages. The owner, as has been heretofore said, may obviate this by discontinuing the use, but the mortgagee has nothing to say about it. He is given no opportunity for a hearing and cannot question the reasonableness or the amount of the expense. An affidavit filed by an unknown official or employee determines the lien. The result of this procedure is that the plaintiffs pay for all the improvements and alterations without having been given their day in court or afforded any hearing. The improvements do not increase the value of the mortgage security as it in effect becomes a second lien. This surely is a taking of the plaintiffs' property without due process of law, and is also a violation of their contract for a first lien by an act of the Legislature which authorizes it. (*Matter of Trustees of Union College*, 129 N. Y. 308; *Stuart* v. *Palmer*, 74 N. Y. 183; *Worthen Co.* v. *Kavanaugh*, 295 U. S. 56; *Panhandle Eastern Pipe Line Co.* v. *State Highway Commission*, 294 U. S. 613; *Worthen Co.* v. *Thomas*, 292 U. S. 426; *Londoner* v. *City and County of Denver*, 210 U. S. 373; *Davis* v. *McLean County*, 52 N. D. 857; *Yeatman* v. *King*, 2 N. D. 421.)

The rights of the mortgagee, however, go much further than to require the mere service of notice and an opportunity to be heard. No lien under this law can be placed upon the property which supersedes the lien of the mortgage. The situation, as already appears, of the owner and that of the mortgagee, are entirely different. Whatever improvements or changes the owner may make at his own expense to enable him to continue the property as a multiple dwelling, would not and could not take precedence over the first mortgage. The owner would have no lien as against the mortgagee for such expenses. How can the city, because it advances the funds for such a purpose, obtain such a preference? It only acts when the owner refuses to make such improvements and insists upon maintaining a tenement house in spite of the mortgagee's rights or claims. In other words, while the owner can have no lien for his expenditures, the same result is arrived at indirectly through the city advancing the money for him, thereby procuring a first lien. That is, the remodelling will always be made at the expense of the mortgagee who, as we have seen above, has contracted for a first lien under a law which in these instances requires the security to be a first lien.

It is no answer to this suggestion to say that the property has been improved to the extent of the expenditures. They may or may not add anything to the land value, and on foreclosure sale might not bring one penny more to the mortgagee. It is common knowledge that in New York city many buildings add nothing to the land value. The improvements may or may not enhance the value of the mortgagee's security. It is a speculation, with the chances greatly against their doing so. We may fairly assume that the lien given to the city for the required improvements very materially affects the mortgage security, the property of the mortgagee, and abrogates the contract which he has made with the mortgagor.

That the Legislature, in the interest of public health, safety and welfare, may require tenement houses to be constructed in a certain way and to be supplied with specified equipment, is beyond question. This court has held that so far as the owner is concerned, he cannot maintain the old style tenement house without compliance with this law. (See the cases cited at the introduction of this opinion.) The Legislature cannot, however, require or force an owner to use his property in a certain way or as a tenement or apartment. If the building is dangerous or unsuitable, the city, in the interest of the public health or welfare, may close it up or restrict its use, or even, where dangerous, demolish it; but it cannot compel the owner to keep it for a specific use. This is what the Legislature cannot do or cannot authorize the city to do, although in effect it has tried to accomplish this in reference to property owned by these mortgagees, i. e., the mortgages. Against their will, acting in conjunction with the owner, it has required the mortgagees to continue the building as a tenement house, remodelled as such at their expense to comply with the law. The mortgagees have no alternative except to give up their property and their liens, although their contract, as do all mortgages, obliges the owner to comply with all municipal regulations at his own expense. He is supposed to obey all laws and ordinances. Should the owner fail to meet this contract and obligation, then the mortgagees might have a right to foreclose, or to make the changes, increasing by so much their own liens. Section 258 of the Real Property Law (Cons. Laws, ch. 50) prescribes (Schedule M) a form of mortgage including, " That no building on the premises shall be removed or demolished without the consent of the mortgagee." These rights and privileges have been taken away by this law so far as the mortgagees are concerned, and they are compelled to give up their property and to submit to a violation of their contract because the owner and, we may say the city,

prefers to continue the use of the property as tenements rather than to close them up or permit the mortgagees to take them over.

This is not such a case as *Loring* v. *Commissioner of Public Works* (264 Mass. 460), where water was supplied to buildings, the price of which was made a first lien upon the property superior to all others. The lessor or owner in such a case was held liable for the water rates in spite of the fact that his lessee had agreed to pay them. The owner or, we may add, mortgagees are supposed to acquiesce in such regulations, but we think it is going too far to say that mortgagees have accepted their mortgages with any anticipation or with any view, express or implied, that the Legislature or the city can deprive them of their lien by remodeling buildings in order to relieve the owner of his contractual obligation, to himself make the repairs or improvements, especially as his refusal or failure is due entirely to his unwillingness to adapt his houses to any other purpose or to close them up.

This law, therefore, shoving the mortgage lien into second place at the behest or desire of the mortgagor, contrary to all his contractual obligations, is unconstitutional both under the Federal and State Constitutions.

The court below took the position that because the word " assessment " was used in this law, the expenses charged against the property were in the nature of tax. This cannot be for the reason that the charges upon the real estate were optional with the owner. He accepted the benefit or not as he pleased. The cost of the improvements was not made a public expense to be a charge upon the property even if we consider them in the nature of public benefits unless the owner willed to have them so. A tax is a forced charge levied by the State upon persons or property. It operates *in invitum* and is in no way dependent upon the will or contract, express or implied, of the persons taxed. (*City of Rochester* v. *Bloss*, 185 N. Y. 42, 47, 48; *City of New York* v. *McLean*, 170 N. Y.

374. See, also, *Davis* v. *McLean County* and *Yeatman* v. *King*, *supra*.) The Legislature cannot create a tax by calling it an assessment when it has not the elements or substance of a tax. (*Matter of Long Island R. R. Co.* v. *Hylan*, 240 N. Y. 199; *United States* v. *Butler*, 297 U. S. 1, p. 61; *Carson* v. *Brockton Sewerage Commission*, 182 U. S. 398.) The proposed lien in this case is a mere incident to the Multiple Dwelling Law in order to force compliance. The city always had the authority, and still has, to close up or demolish buildings which are a public nuisance, or it may condemn property for public purposes, but even in these instances, notice and a hearing are afforded the owner.

We, therefore, reverse the judgment below and direct judgment for the plaintiffs, declaring that any liens imposed upon the respective premises for the expenses of making alterations or repairs in accordance with the orders of the Department of Housing and Buildings shall at all times be subject and subordinate to the plaintiffs' respective mortgage liens. The parties have stipulated that there shall be no costs on this appeal.

The judgment of the Appellate Division should be reversed and judgment directed in favor of plaintiffs in accordance with this opinion, without costs.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment accordingly.