SARA A. THORNTON, Plaintiff, *v.* THOMAS AUGUSTUS CHASE, Individually and as Administrator, etc., of CARRIE E. JOHNSON, Deceased, and Others, and THE CITY OF NEW YORK, Defendants.

Supreme Court, Special Term, Kings County, November 13, 1940.

*Gray & Tomlin*, for the plaintiff.

*William C. Chanler, Corporation Counsel*, for the defendant The City of New York.

HALLINAN, J. In an action to foreclose a mortgage upon real property, plaintiff moves for an order striking out the answer of the defendant The City of New York, and for summary judgment, pursuant to rule 113 of the Rules of Civil Practice.

The city was made a party to this action in order to cut off a lien in its favor against the premises in the sum of $197.50, representing the cost of demolishing an unsafe building on the premises in connection with a proceeding brought on or about March 28, 1938, under the provisions of sections C26–193.0 to C26–208.0 of the Administrative Code of the City of New York. It is asserted that under subdivision f of section C26–204.0 thereof, the city's lien is entitled to priority over the plaintiff's mortgage. It is there provided: " Any judgment rendered in an action or proceeding instituted under this title shall be and become a lien upon the premises named in the complaint in such action, such lien to date from the time of filing a notice of *lis pendens* in the office of the clerk of the county wherein the property affected by such action, suit or proceeding, is located. Every such lien shall have priority

before any mortgage or other lien as may exist prior to such filing except tax and assessment liens."

The plaintiff contends that this provision is unconstitutional and constitutes a taking of property without due process of law in violation of section 6 of article 1 of the State Constitution, and impairs the obligation of contract in violation of section 10 of article 1 of the United States Constitution, and in support thereof cites *Central Savings Bank* v. *City of New York* (279 N. Y. 266; certiorari denied, 306 U. S. 661; on reargument, 280 N. Y. 9).

Aside from the reluctance of a court of original jurisdiction to declare unconstitutional a legislative enactment (*Matter of 1175 Evergreen Avenue, Bronx County,* 158 Misc. 158; affd., 270 N. Y. 436; *Flying Eagle Coach Corporation* v. *City of New York,* N. Y. L. J. Feb. 4, 1939, p. 567; affd., 257 App. Div. 812; affd., 281 N. Y. 809), it is a cardinal principle of construction that " legislation should not be declared unconstitutional unless it clearly appears to be so; all doubts should be resolved in favor of the constitutionality of an act." (*Johnson* v. *City of New York,* 274 N. Y. 411, 430.)

I doubt that *Central Savings Bank* v. *City of New York* (*supra*), upon which plaintiff heavily relies, is decisive of the question here presented. That case held unconstitutional subdivision 6 of section 309 of the Multiple Dwelling Law (as amd. by Laws of 1937, chap. 353), whereunder the city of New York was authorized to make certain repairs on old law tenements and assess the cost thereof as a prior lien to existing mortgages without affording the mortgagee opportunity to be heard as to reasonableness of the proceeding or expense. The opinion of the court itself contains passages indicating that the situation there presented is distinguishable from that present in the case at bar. For instance, the court declared. (p. 279) that the Legislature cannot force an owner to use his property in a certain way, adding: " If the building is dangerous or unsuitable, the city, in the interest of the public health or welfare, may close it up or restrict its use, or even, where dangerous, demolish it; but it cannot compel the owner to keep it for a specific use; " and it stated (p. 281): " The city always had the authority and still has, to close up or demolish buildings which are a public nuisance, or it may condemn property for public purposes, but even in these instances, notice and a hearing are afforded the owner."

By citing with approval *Loring* v. *Commissioner of Public Works* (264 Mass. 460; 163 N. E. 82) the Court of Appeals in the *Central Savings Bank* case (*supra*) further demonstrated that the enactment here challenged is to be distinguished from the prior lien

provision of the Multiple Dwelling Law. The court said (p. 280): " The lessor or owner * * * was held liable for the water rates in spite of the fact that his lessee had agreed to pay them. *The owner or, we may add, mortgagees are supposed to acquiesce in such regulations,* but we think it is going too far to say that mortgagees have accepted their mortgages with any anticipation or with any view, express or implied, that the Legislature or the city can deprive them of their lien by remodeling buildings." (Italics mine.)

The term " police power " has been said " to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance." (*Lawton* v. *Steele*, 152 U. S. 133, 136.) The statute, pursuant to which the building upon the mortgaged property was demolished, is obviously a police power measure designed to abate " a public nuisance." (See *Matter of City of New York* v. *Unsafe Building*, 130 App. Div. 396, 402.) That this is so was clearly recognized in *Central Savings Bank* v. *City of New York* (*supra*), wherein the court specifically stated that buildings which are a public nuisance may " in the interest of the public health or welfare " be demolished (pp. 279 and 281).

As for the provision which gives the lien of the judgment for demolition costs " priority before any mortgage or other lien as may exist * * * except tax and assessment liens," I am of the opinion that it is not unconstitutional. As said in *Health Department* v. *Rector of Trinity Church* (145 N. Y. 32, 43): " Laws and regulations of a police nature, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffer injury, it is either *damnum absque injuria,* or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure."

In 5 McQuillin on Municipal Corporations ([2d ed.] § 2262, p. 797) it is said: " Statutes giving priority to assessment liens over other liens existing at the time of the passage have been sustained, and declared not to impair the obligation of the mortgage contract and not to violate the fourteenth amendment of the Federal Constitution."

In *Loring* v. *Commissioner of Public Works* (*supra*) the question presented was whether a 1923 statute giving the city a prior lien for water charges was valid as against the property of a lessor

who before 1923 had leased his premises under an agreement requiring his lessee to pay the water charges. In dismissing the contention that the statute was unconstitutional as an impairment of a contract obligation, the court said (p. 466): " Land may be subjected to liens for a variety of public improvements * * *. The primary and fundamental inquiry is whether the interests of the public require the improvement. When that inquiry is answered in the affirmative, and the means adopted are reasonable, private rights must yield. * * * *Private property, including contract rights and real and personal estate*, is held subject to the lawful exercise of the police power." (Italics mine.)

It is clear that the priority of the lien provision is a concomitant of the measure which enables the city to proceed against unsafe or dangerous buildings, and as aptly stated by the learned corporation counsel, it " provides the arm of the city's police power with strong sinew. To aid the city in its work of furnishing the salutary and essential protection prescribed by the statute, the prior lien provision therein must be upheld."

Accordingly, the motion is denied.