**STATE OF NEW YORK v. GEBHARDT et al.**

**No. 45.**

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1945.

**In the Matter of the Application of Isidore J. MAGASIS for Writ of Habeas Corpus, Isidore J. Magasis, Appellant.**

**In the Matter of the Application of Nettie COHEN for Writ of Habeas Corpus, Nettie Cohen, Appellant.**

**In the Matter of the Application of Bertha ZIMBERG for Writ of Habeas Corpus, Bertha Zimberg, Appellant.**

**Nos. 8983–8985.**

Circuit Court of Appeals, Third Circuit.

Argued Nov. 9, 1945.

Decided Nov. 15, 1945.

Before MARIS, GOODRICH, and O'CONNELL, Circuit Judges.

Jesse E. Waid, of New York City (White & Case, Herbert F. July, John S. DeJose, and Edward J. Kenn, all of New York City, on the brief for Bankers Trust Co.; Willkie, Owen, Otis, Farr & Gallagher and Walter H. Brown, Jr., all of New York City, on the brief for New York Trust Co.; Kaye, Scholer, Fierman & Hays and Harold L. Fierman, all of New York City, on the brief for Independent Group of Bondholders; and Elbert N. Oakes, of New York City, on the brief for Raymond L. Gebhardt and Ferdinand L. Sieghardt), for appellants.

Gerald J. Carey, Asst. Atty. Gen., of New York (Nathaniel L. Goldstein, Atty. Gen., and Orrin G. Judd, Sol. Gen., of Albany, N. Y., on the brief), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from an order of the District Court in the reorganization proceedings of New York, Ontario & Western Railway Company, which gave priority to grade crossing elimination claims of the State of New York under § 4 (3) of the Grade Crossing Elimination Act, Laws 1928, c. 678, McKinney's Unconsolidated Laws, § 7904(3), as amended by Laws 1940, c. 396. The case was before us in Lyford v. State of New York, 2 Cir., 140 F.2d 840, certiorari denied Bankers Trust Co., Trustee, v. New York, 323 U.S. 714, 65 S.Ct. 41, modifying In re New York, O. & W. Ry. Co., D.C.S.D.N.Y., 59 F.Supp. 865; and the statute and the controlling facts are set forth in the opinion then rendered. We held that the State of New York had a valid lien for payments due from the mortgagor railroad, leaving open the question here raised as to the priority of the lien. After our decision the State petitioned for orders modifying previous orders to conform to our decision, directing payment of the installments already due and establishing the priority of the claims over earlier mortgages securing bonds of the debtor. The District Court denied the petition for payment on the ground that the money was not available therefor, but did grant other relief establishing the pri-

ority of the claims over the mortgages; and, as before, the trustees of the debtor, the two trustees of the mortgage bond issues of 1892 and of 1905 respectively, and the Independent Group of Bondholders appeal.

■ In view of the express provision of § 4(3) of the statute that the claim for grade crossing elimination work shall be "a first and paramount lien upon all real property" of the railroad, there can be no doubt as to the legislative intent, and, as we pointed out before, 140 F.2d 840, 844, the facts and circumstances attending its enactment bear out this view. Appellants urge, however, that the statute denies them due process of law in violation of the Fourteenth Amendment to the Federal Constitution and Art I, § 6, of the New York Constitution and impairs the obligation of their mortgage contract in violation of Art. I, § 10, of the Federal Constitution. They rely chiefly on what they assert to be the inadequacy of the provision for notice to the mortgagees and the case of Central Sav. Bank in City of New York v. City of New York, 279 N.Y. 266, 18 N.E.2d 151, 121 A. L.R. 607, amended 280 N.Y. 9, 19 N.E.2d 659, 121 A.L.R. 615, certiorari denied City of New York v. Central Sav. Bank in City of New York, 306 U.S. 661, 59 S.Ct. 790, 83 L.Ed. 1058. The bearing of this case upon the present controversy is the substantial issue on this appeal; for while the issue of priority was not before us on the previous appeal, our discussion showed our acceptance of the statutory intent to accord these claims priority over earlier mortgages.[1]

■ We think that the requirements of notice are adequate. The Grade Crossing Elimination Act was passed after extensive public hearings and pursuant to a constitutional amendment, Art. VII, § 14, adopted at a general election and authorizing the expenditure of $300,000,000 of the state's money for this public purpose and itself advertised pursuant to § 80 of the N. Y. Election Law, Consol.Laws, c. 17. The statute was notice to the mortgagees. "All persons having property located within a state and subject to its dominion must take note of its statutes affecting the control or disposition of such property and of the procedure which they set up for those purpos-

es. * * * Proceedings for the assessment of taxes, the condemnation of land, the establishment of highways and public improvements affecting land owners, are familiar examples." Anderson Nat. Bank v. Luckett, 321 U.S. 233, 243, 64 S.Ct. 599, 605, 88 L.Ed. 692.

But thereafter, in accordance with the provisions of the statute, the Public Service Commission gave notice to the railroad before and after drawing up a list of crossings proposed to be eliminated, McKinney's Unconsolidated Laws, § 7902(3), and to the railroad, as well as any other person it deemed interested, before finally ordering elimination. § 7902(5). On completion of the work the state comptroller forwarded the railroad its determination of the proportionate amount of the cost to be borne by it. § 7904(2). And the mortgagor as a party aggrieved had a right of appeal from any order under the act. § 7910. As a matter of fact, the railroad did avail itself of the right to appeal to the New York courts in a number of instances. In view of the public and protracted nature of the proceeding, we feel that the mortgagees may properly be held to have relied upon the mortgagor to protect their interests and that these repeated personal notices to the railroad constituted such notice as was appropriate under the circumstances.

■ Finally, the appellants had the opportunity of influencing the commission's determination to proceed, since the statute required public hearings before the commission drew up its tentative list, § 7902(3), and again before it decided to eliminate any crossing. § 7902(5). Pursuant to commission orders, public notice of the latter hearings was given by publication in the daily newspapers of the county in which the elimination was to take place. Appellants argue that personal notice to the mortgagees was necessary to meet the requirements of due process of law. But notice by publication is clearly adequate notice to mortgagees of a railroad, since it has uniformly been sustained as sufficient for the owner of property in other cases where government was carrying out a public purpose. Re De Peyster, 80 N.Y. 565 (assessment for public improvements); Lamb v. Connolly, 122 N.Y. 531, 25 N.E. 1042, 34 St.R. 140 (sale

---

[1] While Central Sav. Bank in City of New York v. City of New York, supra, was not discussed in our opinion, it was urged upon us upon petition for rehearing, and again in the petition for certiorari.

of property under lien for unpaid taxes); Huling v. Kaw Valley Ry. & Imp. Co., 130 U.S. 559, 9 S.Ct. 603, 32 L.Ed. 1045; Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L. Ed. 135; North Laramie Land Co. v. Hoffman, 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953.

Central Sav. Bank in City of New York v. City of New York, supra, does not require a different conclusion. That case arose under the Multiple Dwelling Law, Consol.Laws, c. 61-a, Laws 1929, c. 713, as amended by Laws 1937, c. 353; and the court held unconstitutional as against a mortgagee § 309 of that act, which purported to give the State of New York a prior lien for repairs ordered to a private residence used as a multiple dwelling, and made by the city when the tenement owner refused to make them. No public hearings were called for or held, and neither the mortgagor nor the mortgagee had any opportunity to contest the reasonableness of the city's decision. The assessing body could exercise no discretion as to the amount of the claim, but was forced to accept the certificate of an employee of the Department of Housing and Buildings. As the court put it, 279 N.Y. 266, 277, 18 N.E. 2d 151, 155, 121 A.L.R. 607, "An affidavit filed by an unknown official or employee determines the lien."

The provisions as to notice are therefore quite different from those in the Central Savings Bank case. But further, the difference in the underlying facts is so great as to make the state precedent not controlling. It is one thing to say that a mortgagee of a dwelling house does not take his mortgage in contemplation that the mortgagor's failure to make repairs will require action by the city; it is quite another to hold that an investor in railroad bonds is not to be held to have knowledge or expectation of so usual and settled an exercise of the state's police power as the elimination of dangerous grade crossings. Panhandle Eastern Pipe Line Co. v. State Highway Commission of Kansas, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090, a case cited by the New York court in its opinion, Central Sav. Bank in City of New York v. City of New York, 279 N.Y. 266, 277, 18 N.E.2d 151, 121 A.L.R. 607, itself distinguished the situation before it from grade crossing cases, point out the high measure of public interest involved in the latter. And Crane, C. J., distinguished the case of a lien for water rates of the lessee held valid against the lessor or owner, Loring v. Commissioner of Public Works of City of Boston, 264 Mass. 460, 163 N.E. 82, by saying, 279 N.Y. 266, 280, 18 N.E.2d 151, 156, 121 A.L.R. 607, that the "owner or, we may add, mortgagees are supposed to acquiesce in such regulations." And he stressed the element of choice accorded the mortgagor under the New York law under consideration, where "his refusal or failure is due entirely to his unwillingness to adapt his houses to any other purpose or to close them up"—a law, "therefore, shoving the mortgage lien into second place at the behest or desire of the mortgagor, contrary to all his contractual obligations." Ibid. Such a unilateral choice is not open to the great interstate railroads whose property is devoted to the public interest and subject to the incidents and obligations attendant thereon. That the Central Savings Bank case is to be limited to its peculiar facts is indicated also by the decision in Thornton v. Chase, 175 Misc. 748, 23 N.Y.S.2d 735, refusing to extend it to the invaliding of a statute imposing a lien for costs of demolition of buildings unsafe and therefore a direct menace to the general public. The distinction there pointed out accords with our own view of the limits of the Central Savings Bank doctrine.[2] See also Provident Inst. for Savings in Jersey City v. Mayor and Aldermen of Jersey City, 113 U.S. 506, 516, 5 S.Ct. 612, 28 L.Ed. 1102; New York Terminal Co. v. Gaus, 204 N.Y. 512, 98 N.E. 11, and other cases cited by us at page 843 of 140 F.2d.

The statute does not impair the obligation of appellants' mortgage contracts within the constitutional prohibition. Grade crossing elimination has long been accepted as a valid exercise of the police power; and this statute has already been sustained on that ground, as well as the others, against attack by the mortgagor railroad. Re New York, O. & W. R. Co., 244 App.Div. 664, 280 N.Y.S. 174, affirmed In re Grade Crossing of New York, O. &

---

2 See also critical comments in 52 Harv. L.Rev. 684, 33 Ill.L.Rev. 726, 16 N.Y.U.L. Q.Rev. 477, 87 U. of Pa.L.Rev. 613, but cf. 8 Geo.Wash.L.Rev. 116. Denial of certiorari was based expressly on the ground that the judgment "rests upon a nonfederal ground adequate to support it." City of New York v. Central Sav. Bank in City of New York, 306 U.S. 661, 59 S.Ct. 790, 83 L.Ed. 1058.

W. Ry. at East Seneca St. in City of Oswego, 271 N.Y. 567, 3 N.E.2d 188. It is of course settled that a state may modify contract rights in the legitimate exercise of its police power.

Affirmed.