## Audsley Eno and Irene M. Eno

v.

## City of Burlington and Raymond A. Wheel, Building Inspector

[ 209 A.2d 499 ]

February Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion filed April 6, 1965

*George L. Agel* for plaintiff.

*L. John Cain* and *Gilbert F. Myers,* of counsel, for defendants.

**Keyser, J.** This is a petition in Chancery for a permanent injunction to restrain the City of Burlington and its building inspector from destroying or removing a dwelling house owned by the plaintiffs in the defendant city, the building having been condemned under authority of specific ordinances. An agreed statement of facts was filed by the parties on consideration of which the chancellor granted a permanent injunction. The case is here on appeal by the defendants from the decree of the chancellor. The ordinances involved relate to unsafe buildings, being Sections 741 - 746 of Title 5, Chapter 1, Subchapter 3 of the defendant city's Revised Ordinances of 1962.

Three basic questions are presented by this appeal. (1) Is there an invalid exercise of police power arising from the delegation of authority to the building inspector? (2) Did the hearing before the board of aldermen afford plaintiffs due process? (3) Are the ordinances, Sections 741 - 746, invalid for lack of a provision for a judicial review of the condemnation action taken?

The ordinances in question are not a part of the record so the court cannot take judicial notice of them. *State* v. *Pelletier,* 123 Vt. 271, 272, 185 A.2d 456. However, we are permitted to do so by agreement of the parties made at the time of argument, a copy of the city's "Revised Ordinances of 1962" being handed to the court for that purpose.

The essential facts as shown by the agreed statement follow. The plaintiffs own a dwelling house at 24 Convent Square in defendant city. On March 17, 1964, the defendant building inspector gave notice to plaintiffs, that upon his inspection, plaintiffs' building was determined to be unsafe and dangerous because of fire and health hazards and unfit for human occupancy; that plaintiffs were directed to commence to secure or remove the structure by the day following. On March 19, 1964, plaintiffs' attorney wrote the inspector asking him to specify in what respect the building was unsafe and dangerous because of fire hazards. This was answered March 23rd stating it was. the dilapidated, unsafe, unstable and unsanitary condition of the property and that he had requested a survey to be made by the survey board.

On March 27, 1964, the appointed survey board, consisting of the city engineer, fire chief and a Mr. Gibbons as a citizen, each made his report to the building inspector with a copy served on the owners.

The survey report of the city engineer states the condition of the house as he found it, thus:

"Upon entering the building, I found the floors in just about every room to be sagging and what I consider in extremely poor condition. I confirmed this fact by examining the underside of the floors from the basement. Boards in the floor show considerable evidence of being decayed. In some places, the plaster in the ceilings and walls has separated from the lath to the extent where it could fall off and cause injury to the children that occupy the house.

Some of the plumbing in the house was loose from the wall, but probably did not create any hazardous condition. A so-called 'side-arm' gas-type water-tank heater was not properly vented and could become a great hazard if put in use.

Some of the deteriorated floors were soaked with oil spilled from the containers of supply oil to the stove. The cellar wall had holes through which rodents could easily enter into the house. The clapboards and studding on the northside of the house were not plumb. Neither was the cellar wall constructed of concrete block at the eastside of the house. Both of these walls were in the near state of collapse. The whole house was in such a condition that it would not be economical to repair it for use. The filthy condition of the house made it unsuitable for human habitation.

I recommend that the house be demolished."

The chief of the fire department reported that there was a "real fire hazard" and that the building "should be torn down or put back in good condition." The report of the citizen member of the survey board spelled out in detail the unsafe and dangerous condition of the building occupied by a family of six and stated the building was a "real fire hazard."

The plaintiffs appealed the order of the building inspector and the report of the survey board by petition to the board of aldermen. Plaintiffs stated therein that certain changes had already been made and requested that they be permitted to do other work; also that the building be allowed to remain. The board held hearings on April 13 and 17, 1964. The plaintiffs were present with their attorney and Mr. Gay, a builder, as a witness. At the hearing the building inspector read the reports of the survey board. The city engineer, a member of the board, was present but did not testify. Plaintiffs' evidence was to the effect that certain repairs had been done and total repairs would run about $300.00. The board voted to approve the action of the building inspector and directed him to proceed to demolish or remove the house in question.

At the hearing, Dr. Farmer, one member of the board, after a

statement to the board by the building inspector and before testimony was given, made a motion that the building inspector proceed at once with his order. Plaintiffs' attorney objected to this member sitting on the board on the ground that he was biased, having already made up his mind. The member did not remove himself and the hearing then proceeded to its finality.

The charter of the City of Burlington was revised by No. 298, Acts of 1949, of the legislature. The act delegated various powers to the city council, among which are the following:

"Sec. 48. The city council shall have power:

VI. To abate and remove nuisances; . . .

XIV. To prescribe the duties and powers of inspectors of buildings and fire wardens; and to provide penalties for any refusal or neglect to comply with the orders of said inspectors and fire wardens made by virtue of any resolution or ordinance passed by said city council."

The City of Burlington approved a revision of its ordinances effective November 14, 1962. Sections 741 - 746 inclusive of Title 5, Chapter 1 of such ordinances relating to unsafe buildings, prescribe the authority under which the building inspector conducted the condemnation proceeding enjoined here. No question is raised that the ordinances are not within the police power authorized by legislative act and legally enacted by the city. Under such circumstances, they have the force of state law. *Village of St. Johnsbury* v. *Aron,* 103 Vt. 22, 151 Atl. 650.

Plaintiffs first urge that these ordinances are void because there is an unlawful delegation of authority to the building inspector. This contention is predicted upon the claim that the ordinance does not set up standards on which the inspector can evaluate whether a building should be condemned and removed.

The building inspector is an officer appointed by the city council. Charter, sec. 121. He is "authorized and empowered to enforce all ordinances relating to the construction, equipment, management and condition of all buildings and structures in the city. . . ." Ord. sec. 702. It is assumed, the contrary not appearing, that the building inspector is a competent person with practical experience in the construction of brick and wooden buildings as required by 24 V.S.A. §3102.

The ordinances complained of are Sections 742 - 746, Title 5, Chapter 1, subchapter 3, reading as follows:

"Section 742. INSPECTION; NOTICE

The inspector, upon being informed by report or otherwise, that

a structure or anything attached to or connected therewith is unsafe or dangerous shall inspect the same; and if in his judgment it appears to be dangerous, he shall forthwith notify in writing the owner, agent, or person having an interest therein to remove it or make it safe and secure. If it appears that such structure would be especially unsafe in a case of fire, it shall be deemed dangerous within the meaning thereof, and the inspector may fix in a conspicuous place upon its exterior walls a notice of its dangerous condition, which shall not be removed or defaced without authority from him.

Section 743. TIME FOR SECURING OR REMOVING BUILDING

A person notified as provided in section 742 shall before twelve o'clock noon of the day following the service of such notice, commence to secure or remove such structure and shall employ sufficient workmen speedily to secure or remove it; and if the public safety so requires, and if the mayor and aldermen so order, said inspector shall immediately enter upon the premises with the necessary workmen and cause said structure to be shored up, taken down, or otherwise secured without delay, and a proper fence or boarding put up for the protection of the passers-by.

Section 744. SURVEY UPON FAILURE OF OWNER TO COMPLY

If said owner, agent or person interested in such unsafe structure, refuses or neglects to comply with the requirements of such order within the time limited a careful survey of the premises shall be made by a board consisting of the city engineer, the chief engineer of the fire department, and one disinterested person to be appointed by the mayor who shall fix the fee for services of such person so appointed. A report of such survey shall be made in writing and a copy thereof served on said owner, agent, or other person interested.

Section 745. BUILDING TAKEN DOWN OR MADE SAFE BY INSPECTOR

If such report declares such structure to be unsafe, and if the owner, agent, or person interested continues such refusal or neglect the inspector shall cause it to be taken down or otherwise made safe; and the costs and charges incurred shall constitute a lien upon the land upon which such building is situated, and shall be enforced within the time and in the manner provided

for the collection of taxes on land; and said owner or person interested shall, for every day's continuance of such refusal or neglect be fined not more than $50.00 nor less than $10.00.

Section 746. APPEAL FROM ORDER

The owner or person interested who feels aggrieved by any order of the inspector or by the report of said board appointed as provided in section 744 may petition the board of aldermen for relief, setting forth in detail his grievance, filing his petition with the city clerk within 5 days after receiving such order and giving the mayor a copy of such petition. Upon receipt of such copy by the mayor he shall at once call a special meeting of the board of aldermen to consider the subject matter of said petition and take such action in the premises as the board of aldermen shall deem best; but the provisions of this section shall not prevent the city from recovering the forfeiture provided in section 745 from the date of the original notice, unless such order is set aside and annulled by the city council."

For the purposes of Chapter 1, Title 5 of the Ordinances, the building inspector must use the definitions as given in the 1955 Edition of the Building Code of the National Board of Fire Underwriters. Ord. sec. 701. Furthermore, Section 781 of Chapter 1 specifies twenty-five requirements based on types of construction, types of occupancy and all general building regulations that are covered and shall be as promulgated by the above code.

Section 742 provides that "if it appears to the building inspector that the structure would be especially unsafe in case of fire, it shall be deemed dangerous within the meaning thereof." This ordinance follows the exact wording in 24 V.S.A. §3111. "Nothing is more dangerous than fire and considerations of public welfare easily sustain drastic regulatory fire regulation." *Jackson* v. *Bell, Fire Prevention Com'r.,* 143 Tenn. 452, 226 S.W. 207. A fire hazard is a nuisance and the abatement of such a nuisance is not the taking of property without due process or a taking for which compensation must be made. Ibid.

In his determination of whether the building is unsafe and a fire hazard, the inspector is bound by the standards and requirements set forth in the Fire Underwriters Building Code. The inspector, in making his examination of the premises, of necessity, must exercise sound judgment and good faith in applying the code requirements to the conditions found. How else can he determine from what he sees on his inspection whether the building is unsafe and a dangerous fire

hazard? He must use and be guided by the building code, supra, and thus may not act arbitrarily with absolute power on his own personal whims and judgment.

However, this is not a case where the building inspector acted as the sole judge of the matter as plaintiffs contend. It is not the inspector's decision alone which initiated the proceeding and on which the final order was founded for the removal or securing of the building. The survey board was called upon and was required to make a careful survey of the premises under Ord. section 744. The reports of the members of the board point out the structural defects and the condition of the building as they discovered it. A copy of each member's report was served on the plaintiffs. The survey board confirmed the decision of the building inspector. The plaintiffs were fully informed by the survey board reports of the condition of the building which formed the basis of the order that the building be removed or made secure. The plaintiffs having had notice from the building inspector as well as copies of the reports of the survey board have been granted due process in this respect. Thereafter, the plaintiffs petitioned the board of aldermen for relief under Section 746 whereupon the mayor called a special meeting of the board. The parties were notified and a hearing was held on two dates.

■-■ The action thereupon exercised by the board of aldermen was judicial. *Davidson* v. *Whitehill,* 87 Vt. 499, 505 - 6, 89 Atl. 1081. The factual question was thus left to judicial determination. However, "a municipal determination of the existence of a nuisance in fact is only persuasive and not conclusive." 6 McQuillin, Municipal Corporations, 3rd Ed., §24.84, also §§24.82 and 24.83 to the same effect. The action of the board is presumed correct and valid and the court will indulge every presumption in support of its quasi-judicial determination of the facts, in the absence of evidence to the contrary. 73 C.J.S. Pub. Admin., §145 and cases there collected. And even though the findings of a municipal body are not conclusive they are entitled to considerable weight. 62 C.J.S., Municipal Corporations §410. The careful survey required by the survey board and the review by the board of aldermen provided adequate protection to the plaintiffs' rights against an arbitrary or capricious decision of the building inspector.

The second issue is whether the hearing before the board of aldermen was fair and impartial. The plaintiffs first assert their rights were violated as there was no opportunity for cross-examination of the members of the survey board. The agreed facts show that the building inspector was present at the hearing and the city engineer, a member

of the survey board. These witnesses being present, they were available for cross-examination if the plaintiffs felt it was necessary or required in their interests to call them to testify. Failing to do this, it may well be presumed that the plaintiffs rested on the facts these persons had stated in their reports and chose not to call them for cross-examination. The opportunity was present but not taken advantage of. There is nothing in the record which shows the plaintiffs made any objection to the reports at the hearing before the board of aldermen. The plaintffis' right of subpoena or to produce evidence was not denied or abridged in any manner. No error has been made to appear on this claim of the plaintiffs.

The plaintiffs also claim that an impartial hearing was not accorded them because Dr. Farmer, one of the aldermen, was prejudiced. Although plaintiffs objected, Dr. Farmer continued to sit on the board in its determination of the issue. We have no findings of fact before us, only an agreed statement of facts. We can only draw necessary inferences from the agreed statement of facts and are bound to construe the record reasonably. *Olan Mills, Inc.* v. *Barre,* 123 Vt. 478, 480, 194 A.2d 385.

This court does not make findings of fact. The ordinance, sec. 746, required that the hearing be held before the board of aldermen. To say that Dr. Farmer was biased and prejudiced as plaintiffs argue would require us to make such a conclusion from the agreed facts. The mere fact that Dr. Farmer made his motion, although indiscreet and unwise, without more, does not in and of itself sufficiently establish plaintiffs' claim of prejudice or operate as a disqualification. See *State* v. *Rickert,* 124 Vt. 380, 383, 205 A.2d 547; *Green* v. *Laclair,* 91 Vt. 23, 99 Atl. 244. The agreed facts do not indicate this incident had any influence on the other members of the board. Nor is it shown that his motion was of such a decided character as to work a disqualification of this member. The decision of the board was not made until after the completion of the hearing. The record does not disclose any dispute by the plaintiffs that the condition of their building was not as reported by the members of the survey board. Nor does it appear that p|aintiffs disagreed that the house was unsafe and a real fire hazerd. The petition to the board for relief does not set forth any grievences in detail as required by Section 746. The course adopted by plaintiffs was to show that they had made a few repairs and asked to be allowed to do further work so to have the building remain on the tax rolls of the city.

It is abundantly clear from the facts that the building was in a dangerous and unsanitary condition and a real fire hazard. Facing

up to these facts, we cannot perceive that the other members of the board, acting as fair-minded and reasonable men, could have decided otherwise than to approve the action of the building inspector and survey board irrespective of what Dr. Farmer said. The board was acting with quasi-judicial power and the legal presumption is that the board acted judicially. *State* v. *Harrington*, 68 Vt. 622, 636, 35 Atl. 515. See 73 C.J.S., Pub. Admin. §62. Prejudice must affirmatively appear and be established by the party claiming it. *Lewis* v. *Gagne*, 123 Vt. 217, 220, 185 A.2d 468.

The final question is whether the ordinances in issue are invalid because no provision is made for a judicial review of the action taken thereunder. The plaintiffs contend the lack of this provision deprives them of the benefit of due process of law and renders the ordinances void.

The case of *Sabre* v. *Rutland R. Co.*, 86 Vt. 347, 85 Atl. 693, is controlling on this issue and is against plaintiffs' contentions. There the plaintiff claimed the Public Service Commission laws were void for want of a provision for an adequate judicial review of the orders of the commission. The court said at page 369: "Section 4, (now section 28), Chapter 2 of our Constitution, providing that 'The Courts (of Justice) shall be open for trial of all causes proper for their cognizance,' means among other things, that by a proper proceeding the question of whether an administrative body has exceeded its powers may be brought before and determined by the established courts. No special machinery need be provided for this purpose for the common law which is a part of the law of this state provides all the requisite machinery." The Court further said that the powers given the court on appeal and the common-law remedies were sufficient to secure to every party interested in the orders of the Railroad Commission a vindication of his full rights against arbitrary and unreasonable action, usupation of powers, and acts in excess of authority. The court held "These principles are firmly established in this jurisdiction," citing numerous cases.

This is in accord with the statement in 6 McQuillin Municipal Corporations, §24.80. See 16 C.J.S. Constitutional Law, §156 at pgs. 494, 629. In *Parker* v. *Fairmont*, 72 W. Va. 688, 79 S.E. 660, the court held that "Injunctions will lie to restrain proceedings of a municipal corporation to remove an alleged nuisance, where private rights are encroached upon and irreparable injury will ensue." The court held in *Norwood* v. *Wiseman*, 141 Md. 696, 119 Atl. 688, that an ord-

inance forbidding and providing a penalty for selling liquor without a license was not invalid because it gave no right of jury trial or appeal.

In the case at bar it is to be noted that the right to a judicial review by appropriate proceedings is not foreclosed by any provision of the ordinances in question.

The plaintiffs have resorted to one of the remedies available to them. The remedy pursued gave plaintiffs the opportunity for a full hearing on the merits if they so desired. However, the facts were not determined by the chancellor but rather they were reached by agreement of the parties.

In view of what we have said, it was error for the court below to grant a permanent injunction to the plaintiffs. *The decree of the Chancellor is reversed, the permanent injunction granted to plaintiffs is set aside and plaintiffs' petition is dismissed.*