# State of Vermont v. Wayne Francis Morse

[ 241 A.2d 328 ]

February Term, 1968

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 2, 1968

*John T. Carmody, Jr.,* State's Attorney, for the State.

*Milton Pinsker,* Esq. for the Defendant.

**Keyser, J.** The respondent, appellant here, was convicted under two counts of an information filed by the State's Attorney of Bennington County, first, that he committed a breach of the peace by assaulting one Douglas H. Britch, and second, that he carelessly and negligently wounded said Britch by gunshot. The appeal raises three points: (1) violation of respondent's right of due process by the failure of the state to produce one Earl Peacock as a witness; (2) error by the court in striking a portion of an answer in the deposition of one Marion Charest; and (3) error of the court in refusing to charge on self-defense in the words of *State* v. *Doherty,* 72 Vt. 381, 48 A. 658.

On September 14, 1966, one Douglas Britch and his friend, Earl Peacock, went from Bennington to call on the respondent at his home in Woodford. This was in the early evening. They also found Mrs. Marion Charest, aunt to Britch, present in the house. Previously, that afternoon, Britch and Peacock had stopped for some time at a tavern in Bennington for a few drinks. Mrs. Charest observed both of the men had been drinking. An argument arose between Britch and the respondent about some remarks which the respondent had made the week before to Britch's wife. As a result Britch punched respondent in the neck who then told Britch to get out, that he didn't want any trouble. Peacock got up and said "let's leave" to Britch. He scuffled with Britch and finally pushed him out through the door being held open by Mrs. Charest. In the meantime the respondent went into the next room, returned with a revolver in his hand and ordered Britch off the property. He and Mrs. Charest then followed Britch and stood in the doorway. There was more argument, name calling and talk by Britch more or less daring respondent to shoot. Meanwhile Peacock was pushing Britch to get him into the car. The testimony of respondent and Marion Charest was that Britch was trying to get away from Peacock and at the respondent and lunged toward him. The testimony of Britch was that he was standing near the automobile. All this resulted in the respondent firing two shots towards Britch, one striking

the ground near him and the second hitting him in the left shoulder above the heart.

The prosecution did. not have Earl Peacock present as a witness. The respondent argues that because of this fact the state suppressed his testimony and thus violated respondent's right of due process.

This matter arose only in respondent's argument to the jury when he commented on the fact of Peacock's absence. The state's attorney answered that Peacock was in Florida, and that although an attempt had been made by the prosecution to subpoena him it was impossible either to serve process on Peacock or locate him.

■ Our search of the record fails to show that this point was raised below. In this circumstance, being raised here for the first time, it is not for our consideration. *Bilodeau & Co.* v. *Reed,* 119 Vt. 342, 347, 126 A.2d 118.

■ At the close of the state's evidence, when it became known that the prosecution was not calling Peacock as a witness, the respondent remained silent. He made no request either for the production of the witness or for an explanation as to why he was not present. A question cannot be brought to this court upon which it is made to appear that the trial court had no fair opportunity to pass judgment. *Anderson* v. *Knapp et al,* 126 Vt. 129, 139, 225 A.2d 72; *State* v. *Stone,* 123 Vt. 95, 96, 181 A.2d 840. If it was respondent's election to take advantage of Peacock's absence as a witness in his argument to the jury, his failure to raise the issue earlier may have had that as a basis. This election cannot now be turned into reversible trial error. The witness was as amenable to the respondent as well as the state.

■ The duty of the state to produce and use witnesses, of whatever character, whose testimony will shed light upon the transaction under investigation and aid the jury in arriving at the truth, applies to witnesses within reach of process. *State* v. *Searles,* 108 Vt. 236, 239, 184 A. 701. There is no indication in the record to show that the respondent sought to compel the attendance of this witness from outside the state under the uniform act, 13 V.S.A. §§6641-6649.

■ Even aside from the above, it is not evident just how Peacock's testimony would have been more than cumulative. The respondent and Mrs. Charest as well as Britch had related the whole story of what happended with little variance between their testimony. There is

no showing that Peacock could have added any evidence material to respondent's guilt or innocence. Viewed in this light the respondent was not prejudiced by the lack of Peacock's testimony. Prejudice must be shown. *State* v. *Goyet,* 120 Vt. 12, 29, 132 A.2d 623.

Before trial the respondent took the testimony of Marion Charest by deposition because she was then hospitalized. The court ruled out a portion of one answer as not being responsive. The question and answer is as follows:

Q. At the time of the second shot was Doug Britch in a fighting mood, lunging forward?

A. Raging mood. Like a maniac. Just like a crazy man, a man who is completely out of his head, gone completely crazy.

On objection by the state as stating an opinion, the court excluded all of the answer excepting "raging mood." The respondent claims the lack of this evidence in the case violates his right of due process.

In a previous answer the court had already excluded the words "He looked like a crazy man." This was with the approval of respondent's counsel.

Although the evidence approached the level of an opinion, it did serve to characterize the actions and attitude of Britch. The court could well have let it stand but its exclusion was not error. The question was leading and it required no more than a yes or no answer. When the witness said "raging mood" she had fully answered the question and the court properly excluded the remainder of the answer as not responsive to the question asked. The matter of giving unresponsive answers rests largely in the hands of the trail court to be dealt with as justice requires. *State* v. *Goyet, supra,* at page 31, 132 A.2d 623.

Moreover, the respondent testified substantially to the same effect: "I was standing right on the threshold. Marion stood kind of back of me looking out through there. Earl got Doug all the way out to the car, probably about where them scuffle marks are shown. That's when Doug broke loose of Earl and started back toward me yelling, calling all kinds of names and just acted hysterical, half mad or something, I don't know, out of his head, so I shot in front of the door." The respondent thus had the benefit of the excluded evidence through his own testimony.

■ The respondent has not demonstrated, as he must, in what respect he or his rights were prejudiced by the exclusion of this testimony. *Lewis* v. *Gagne,* 123 Vt. 217, 220, 185 A.2d 468; *State* v. *Goyet, supra,* 120 Vt. at page 29, 132 A.2d 623.

Respondent claims there was a shortage in the court's charge in respect to his theory of self-defense. His exception to the charge is based upon the following request orally made at the conclusion of the court's charge to the jury:

"I have no objection to the charge except I feel that in view of the circumstances on the question of self defense the law as ennunciated in State of Vermont, 72 Vermont, 381, should be expressed, specifically set forth, that is that if a man finds himself in circumstances as he believes, and in this particular case it is brought out, through nervousness, fear, fright or cowardice are matters to be taken into consideration."

The respondent does not complain about what the court did charge; he only claims the court did not say enough. Specifically, he urges that the court should have further charged the jury that they should take into consideration respondent's "nervousness, fear, fright, or cowardice." (*State* v. *Doherty, supra*).

A careful reading of the charge clearly demonstrates that the general subject of self-defense was treated fully and adequately by the court and covered all of the essential elements.

■ It was not necessary for the court to use the precise terms which the respondent claims ought to have been included in the charge. The court may select its own language for instructions and as long as the essential elements of self-defense were charged, the extent of elaboration was within the discretion of the court. *Covell* v. *McCarthy,* 123 Vt. 472, 477, 194 A.2d 394.

■■ There were seven counts in the information. The jury found respondent guilty as to two and not guilty as to the remainder. Those five counts charged in varying terms respondent's intent to kill Britch. If the evidence required the court to charge the jury as suggested by the respondent, the failure to do so did not harm the respondent for the reason that the jury returned a verdict of not guilty on the counts of which such charge would have been pertinent. It was not applicable to the count charging a breach of peace and careless

and negligent wounding of Britch by gunshot. The evidence does not show circumstances from which the respondent could have reasonably been led to believe that he was in danger of being killed or of great bodily harm, and through nervousness, fear, fright or cowardice that he shot Britch, it reasonably appearing to him that he could defend himself in no other way. *State* v. *Doherty, supra,* a homicide case. All the respondent had to do to protect himself, once Britch left the house and went to his car was to shut and bolt the door of the house. This would have broken off the hostilities and the shooting which followed would never have occurred.

· The trial court's charge "breathes the true spirit and doctrine of the law" and there is no fair ground to say the jury was misled by it. *State* v. *Coburn,* 122 Vt. 102, 110, 165 A.2d 349, 355.

Considering the evidence before us, we are convinced that the respondent had a fair trial and has suffered no injustice on his trial.

*Judgment affirmed.*