### In re John A. Shuttle

[306 A.2d 667]

No. 184-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

458

*John P. Ambrose, Esq.*, of *Burgess & Kilmurry*, Montpelier, for Plaintiff.

*Robert W. Gagnon,* State's Attorney, for the State.

**Keyser, J.** The petitioner brought a petition for post-conviction relief to the Washington County Court. He was charged in District Court, Unit No. 5, Washington Circuit, with three counts of feloniously obtaining money by false token, under 13 V.S.A. § 2002. On September 22, 1971, petitioner was arraigned and pleaded not guilty. Official entry of his plea was delayed for twenty-four hours to give him an opportunity to confer with his assigned counsel, Attorney Brownell. On October 19, 1971, he withdrew his plea of not guilty and entered a plea of guilty to Count I. Counts II and III were thereupon nol prossed. Also the state's attorney agreed to make no recommendation as to sentence and that he would not seek an indictment as a habitual offender. This was in accordance with a plea bargain agreement entered into between the petitioner, his attorney, and the state's attorney.

Sentencing was initially set for December 21, 1971. The petitioner on that date had filed three *pro se* motions, and then his assigned counsel filed two other motions on December 28. Sentencing was on January 5, 1972, prior to which the district court heard the five motions and denied each of them. The court sentenced the petitioner to serve not less than three and one-half nor more than ten years in Windsor State Prison with a credit on the minimum sentence of 106 days for time already spent in confinement.

After hearing the petition for post-conviction relief and making findings of fact, the county court denied the petition whereupon petitioner appealed.

Petitioner's first exception is that the district court erred in denying his motion that the late filing of the pre-sentence investigation report gave grounds for the dismissal of the case for lack of prosecution. The statute provides that the report be filed "not less than one nor more than three weeks" from the date it was ordered by the court, namely, October 19, 1971. 28 V.S.A. § 1208.

The findings show the written report was submitted to the district court on November 26, 1971, a period of thirty-eight days after the report was ordered by the court. During the time the probation officer was making his investigation, the petitioner escaped from the Regional Correctional Facility and

was at large for ten days before being rearrested. When notified of this fact, the officer went to work on a backlog of other pre-sentence investigations and laid aside the report on the petitioner. This situation delayed the filing of the report in court and was brought about to a large measure by petitioner's own actions. The petitioner failed to establish that he was prejudiced by the late filing of the report. In fact, his minimum sentence was credited with the time he had been confined. The petitioner contends the filing requirement of the statute is mandatory and that it is not within the discretion of the court to extend the time to do so.

■ ■ The obvious purpose of the statute is to furnish a case history of a respondent to the court before it imposes sentence. This information is an aid to the court and, likewise, it also can be of benefit to the respondent. But the statute does not create rights of a substantive nature in the respondent. The court complied with the statute and did not sentence the respondent until it had the report. The statute does not provide that the respondent shall be discharged if the report is late. This is a procedural defect only. In this case no harm to the petitioner is shown since his minimum sentence was reduced by the number of days he had been confined for lack of bail.

The petitioner has not demonstrated, as he must, in what respect he or his rights were prejudiced by the denial of his motion to dismiss. *State* v. *Morse,* 127 Vt. 137, 141, 241 A.2d 328 (1968). This exception is without merit.

Secondly, the petitioner claims his motion to dismiss should have been granted on the ground that the presiding judge of the district court, Judge Connarn, should have disqualified himself.

Disqualification of judges is found in 12 V.S.A. § 61(a), reading as follows:

> "A . . . judge . . . shall not act in a judicial capacity in or as trier of a cause or matter in which he has been retained or acted as an attorney or counsel, or is interested in the event of such cause or matter. . . ."

Judge Connarn represented the State as attorney general before 1962 in making an argument in court in a post-conviction review proceeding brought by the petitioner. It also ap-

pears that the petitioner at one time was before Judge Connarn as a litigant, and the judge was subpoenaed to testify in federal court relating to prosecutions against the petitioner to that court for review.

The petitioner argues that Judge Connarn was biased and prejudiced. The finding of the trial court is to the contrary. It found that the petitioner's contention of bias and prejudice was unfounded by the evidence. Bias and prejudice on the part of the court must be affirmatively and clearly shown. *Eno* v. *City of Burlington,* 125 Vt. 8, 209 A.2d 499 (1965). See also *Morse* v. *Morse,* 126 Vt. 290, 291, 229 A.2d 228 (1967), where it is said that "it must appear that it is the judge who is prejudiced against the party, and not that it is the party that is prejudiced against the judge."

The evidence and findings amply support the conclusion of the court that petitioner's claim "that Judge Connarn was biased and prejudiced is unfounded by the evidence." It is unfounded in law as well. Error on this point is not made to appear.

The petitioner next contends his plea of guilty was illegally obtained by means of coercion and misrepresentation on the part of his counsel.

The petitioner was represented by assigned counsel of his own choice after being arrested and arraigned. Attorney Julian Goodrich, Esq., his assigned counsel, was also representing him on other pending matters. Petitioner was charged with three felony crimes by false token which his counsel investigated and then conferred again with petitioner. This conference was transcribed and introduced into evidence.

The transcript of the conference clearly indicates that petitioner was very concerned about his sentence. His counsel had previously discussed the matter at length with the state's attorney. From this, counsel learned that the state's attorney was considering a charge against the petitioner of being an habitual felon as the petitioner had a record of several previous felony convictions. Petitioner asked his counsel—"Can you see what you can do?" The course of action to be taken in the case was left with the petitioner. He was told by his counsel—"I suggest you think about whether you

want a trial." The ultimate result was that the plea bargain agreement heretofore mentioned was entered into. It was consummated by the plea of not guilty being withdrawn on October 19, 1971, and a plea of guilty being entered to Count I, and Counts II and III being nol prossed. The other provisions of the agreement were carried out by the state's attorney.

Before the court accepted petitioner's plea of guilty, he admitted that his plea was free, voluntary, and made without threat. The transcript of the proceedings on October 19, 1971, leaves no doubt that petitioner was made well aware of the charge in Count I, his right to a jury trial, the effect and consequences of his plea and the penalties under the statute. He also was asked by the state's attorney whether he was "satisfied with Mr. Goodrich as your counsel and what he has done for you" to which he answered "Yes." The record bears out the conclusion that he was wisely and properly advised by his counsel.

The court in this case concluded that petitioner's plea "was voluntary, and not coerced and under threat, intimidation or ignorance." Since this conclusion is sustained by the record and the subordinate findings, the petitioner is bound by his plea. *In re Mossey*, 129 Vt. 133, 139, 274 A.2d 473 (1971). See also *Brady* v. *United States*, 397 U.S. 742 (1970).

The petitioner further maintains that the behavior of his counsel in procuring a plea of guilty comprises incompetence to the extent that the accused was prevented from fairly presenting his defense.

■■ The evidence establishes that the petitioner admitted in open court that he was satisfied with Mr. Goodrich as his counsel and with what he had done for him. Our search of the record fails to show that this point of incompetency of counsel was alleged in his petition or raised in the court below. Thus, the court was given no opportunity to rule on the question or make findings regarding it. In this circumstance, being raised here for the first time, it is not for our consideration. *State* v. *Morse, supra,* 127 Vt. at 139.

We comment in passing, however, that a review of the record discloses nothing whatever from which it could be inferred that the conduct of petitioner's counsel was anything but fair, proper and notably competent.

██ When a trial court appoints a member of the bar in good standing as counsel for a respondent in a criminal proceeding, there is a presumption that the counsel is competent. *State* v. *Rushford,* 127 Vt. 105, 109–10, 241 A.2d 306 (1968). There was no evidence produced to override this presumption.

██ ██ The petitioner next contends that he had a right to see the pre-sentence investigation report. This is not a matter of right but lies within the sound discretion of the court. *State* v. *Morse,* 126 Vt. 314, 318–19, 220 A.2d 232 (1967). The burden was on the petitioner to show that the district court abused its discretion in not permitting him to see the report. He had full benefit of it as his counsel examined the report prior to sentencing and discussed it with the petitioner.

The petitioner made no request of the court for a copy of the report. Neither did he challenge it in any manner although he testified there were some inaccuracies in it. No abuse of discretion appears.

Lastly, the petitioner asserts he was denied due process in district court in violation of his right guaranteed in the Fourteenth Amendment of the United States Constitution.

The petition brought by the petitioner states his "Contentions", one of which was that he was "Denied Bail". He later contended in his petition "that he was denied and refused Due process of Law and Equal protection of the law", but no facts are stated in support of this claim.

The court found as follows:

> "39. Petitioner claims he was denied bail, but the evidence is undisputed that at his arraignment on 22 September 1971 the Court set bail at $2,000.00 on each Count, and on his change of plea on 19 October 1971 the Court set bail at $4,000.00 on Count I.
>
> There is no evidence that petitioner at any time could furnish bail in any amount."

██ The petitioner now argues in this Court that the bail proceedings on September 22, 1971, did not conform to 13 V.S.A. § 7553a(d). The court fixed bail on each of the three counts at $2,000, cash or bail bond. After this was done, Attorney Brownell, a member of the law firm with Attorney

Goodrich, approached the court to speak in behalf of Attorney Goodrich who had just been assigned as counsel for the respondent but was not present.

Mr. Brownell asked, with respondent's approval, that the respondent "be released without bail as he is without means to furnish bail, in order to care for his family." The court (judicial officer) did review the conditions he had imposed, but refused to reduce the bail and stated reasons for not doing so.

Under the facts 13 V.S.A. § 7553a(d) does not apply as the change in bail conditions was not requested by the respondent "after making a reasonable effort to meet the conditions of release." No further review was requested by the respondent.

After the respondent pleaded guilty to Count I and the two remaining counts had been nol prossed, the court fixed bail at $4,000.00 pending imposition of sentence. The respondent argues this action was not in accordance with the guidelines set forth in 13 V.S.A. § 7553a. That section, however, relates to "Release in non-capital cases prior to trial" and was not applicable to setting bail after conviction.

*The order denying petitioner's petition is affirmed.*