174 N.J. Super. 178 (1980)
415 A.2d 1210
CITY OF PATERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
FARGO REALTY INC. AND REHAB REALTY, INC., JOINTLY, SEVERALLY OR, THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, District Court  Passaic County.
April 25, 1980.
*181 Irwin H. Tessler for plaintiff (Henry Ramer, attorney).
Theodore A. Lobsenz, attorney for defendants.
SAUNDERS, J.S.C. (temporarily assigned).
This case raises novel issues concerning a municipality's power to summarily abate a nuisance and to assess the cost thereof as a personal obligation of the property's owner under N.J.S.A. 40:48-1.1.
The facts of this case were stipulated as follows. On November 7, 1978 defendant Fargo Realty Inc. (Fargo) was the owner of property located at 125 North Third Street, Paterson, New Jersey. On that same day the house situated on those premises was heavily damaged by fire. On November 8, 1978 the property was conveyed by deed from Fargo to codefendant Rehab Realty, Inc. (Rehab). This conveyance was recorded in the office of the Register of Deeds and Mortgages of Passaic County on November 9, 1978.
*182 On November 8, 1978 a Western Union Mailgram addressed to Fargo was delivered to its registered office located at 250 Van Houten Street, Paterson, New Jersey, at 12:45 p.m. This telegram informed Fargo that "[d]ue to dangerous and hazardous conditions that exist at 125 North Third Street Paterson New Jersey structure must be demolished within 48 hours of receipt of this order." Fargo failed to demolish the building and on December 4, 1978 the City of Paterson had the remains of the structure demolished at a cost of $1,625. On February 5, 1979 a demolition lien was placed on the property by the city in the amount of $1,625. The parties agree that the value of the property immediately before and after the demolition was less than the amount of the demolition lien and assessment. The 1978 land assessment was $1,200.
On April 12, 1979 the city filed suit pursuant to N.J.S.A. 40:48-1.1 seeking to obtain a personal judgment against both defendants for the entire cost of the demolition. The case is now before the court on cross-motions for summary judgment.
Several issues were raised by defendants, but subsequent to oral argument they advised the court that they were waiving all defenses and proceeding only on the following issues:
I. Does N.J.S.A. 40:48-1.1 permit an unconstitutional taking of property without adequate compensation in violation of U.S. Const., Amend. V and N.J.Const. (1947), Art. I, par. 20?
II. Is the assessment and demolition lien analogous to the levy of a special assessment and therefore limited to the enhancement value to the land?
III. Which defendant (if either) is personally liable for the cost of the demolition?
As required by R. 4:28-4(a), the Attorney General of New Jersey has been given notice of the action and the constitutional issue raised, but has not intervened.
Every citizen holds his property subject to the proper exercise of the police power, either by the Legislature directly or *183 by municipal corporations to which the Legislature has delegated such power. State v. Mundet Cork Corp., 8 N.J. 359, 371 (1952), cert. den. 344 U.S. 819, 73 S.Ct. 14, 97 L.Ed. 637 (1952). A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property. Rosenberg v. Sheen, 77 N.J. Eq. 476 (Ch. 1910); 7 McQuillin, Municipal Corporations (3 ed. 1968) § 24.561 at 591. Moreover, it has been suggested that under such circumstances the municipality not only acts clearly within its police power, but also fulfills its duty to act in the interest of the health and safety of its inhabitants. Springfield v. Little Rock, 226 Ark. 462, 290 S.W.2d 620 (Sup.Ct. 1956).
The right of summary action in the abatement of public nuisances exists at common law under the police power. Vanderhoven v. Rahway, 120 N.J.L. 610, 612 (Sup.Ct. 1938); Lawton v. Steele, 152 U.S. 133, 136-137, 14 S.Ct. 499, 38 L.Ed. 385 (1894); 6 McQuillin, supra, § 24.71 at 625 626. "But the right to summarily abate a nuisance is not without limitations. The right is based upon necessity and the necessity must be present to justify its exercise." (Citations omitted). Ajamian v. North Bergen Tp., 103 N.J. Super. 61, 80 (Law.Div. 1968), aff'd o.b., 107 N.J. Super. 175 (App.Div. 1969), cert. den. 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970). In Ajamian the Law Division held that where there was an immediate danger to health or safety, township officials could rely on the police power to summarily vacate a building and need not compensate the owner. Id. at 81. Accord, Leppo v. Petaluma, 20 Cal. App.3d 711, 97 Cal. Rptr. 840, 843 (D.Ct.App. 1971), stating that in emergency situations the city can dispense with a due process hearing and demolish a building summarily.
N.J.S.A. 40:48-1(15) authorizes a municipality to make and enforce ordinances to provide for the removal of any building or structure which is or may become dangerous to life or health. *184 Pursuant to this statutory grant the City of Paterson enacted sections 5:2-29 through 38, inclusive, of the Revised Ordinances of Paterson (R.O.P.). The city, in demolishing the premises at 125 North Third Street, Paterson, relied on R.O.P. 5:2 35. That section provides:
... buildings, walls or other structures which shall be unsafe so as to be a danger to life and limb shall immediately upon notice from the chief building inspector be made safe and secure or taken down, and when the public safety requires immediate action, the chief building inspector may forthwith enter upon the premises with such assistance as may be necessary and cause such structure to be made secure or taken down at the expense of the owner or party in interest.
The demolition cost of $1,625 was filed as a municipal lien with the city tax assessor. R.O.P. 5:2 34. The city then brought the pending action against defendants, alleging their personal liability for the demolition costs. N.J.S.A. 40:48-1.1 adopted in 1978 provides:
Whenever any municipality, pursuant to law or pursuant to any ordinance, rule or regulation adopted pursuant to law, undertakes the removal or demolition of any building or structure which is dangerous to human life or the public welfare or which constitutes a fire hazard, the governing body of the municipality, in addition to assessing the cost of such removal or demolition as a municipal lien against the premises, may enforce the payment of such assessment, together with interest, as a debt of the owner of the premises and may authorize the institution of an action at law for the collection thereof. The superior court, a county court, or a county district court shall have jurisdiction of any such action.
Defendants argue that the assessment of the demolition cost as a personal obligation of the property owner under N.J.S.A. 40:48-1.1 amounts to an unconstitutional taking of property without adequate compensation. In support of this argument defendants contend that the statute allows a municipality to take personal assets from the property owner through a demolition lien which exceed the value of the property. Specifically, defendants point to the value of the property at 125 North Third Street immediately before and after the demolition which has *185 been stipulated to be less than the amount of the demolition lien. Defendants conclude that a statute cannot constitutionally impose personal liability on the owner because the property is worth less than the cost of the demolition.
The city argues that the statute was enacted to meet a recognized evil inflicted upon municipalities in urban areas, i.e., the cost and burden of demolishing structures which have become dangerous to human life and the public welfare as a result of fire, neglect or vandalism.
N.J.S.A. 40:48-1.1 was clearly implemented to assist a municipality in recovering the cost of demolition necessitated by the imminent threat of harm to human life. The statute permits a municipality to recover such costs not only through the imposition of a lien on the property, but also through an action at law as a personal debt of the property owner. See Statement to the original bill, L. 1978, c. 113.
The issue raised by defendants questions whether there are any constitutional limitations as to the amounts a municipality may recover to defray the costs of demolition performed in order to protect the public health and safety.
It has long been recognized that a right to reimbursement will accrue to a municipality for its expenses in rightfully demolishing a building constituting a public nuisance. 7 McQuillin, supra, § 24.561 at 596; 6 McQuillin, supra, § 24.79 at 638-639. Also, Brown v. Tobriner, 312 F.2d 334 (D.C. Cir.1962); Buffalo v. Dankner, 48 App.Div.2d 572, 370 N.Y.S.2d 266 (App.Div. 1975), app. on const'l grounds dism., 38 N.Y.2d 826, 345 N.E.2d 607, 382 N.Y.S.2d 1033 (Ct.App. 1975); Oosterwyk v. Milwaukee, 7 Wis.2d 160, 96 N.W.2d 372 (Sup.Ct. 1959); Nashville v. Weakley, 170 Tenn. 278, 95 S.W.2d 37 (Sup.Ct. 1936); Bond v. Moss Point, 240 So.2d 270 (Miss.Sup.Ct. 1970); Chicago v. Nielsen, 38 Ill. App.3d 941, 349 N.E.2d 532 (App.Ct. 1976); Mason v. Buchman, 49 *186 Mich. App. 98, 211 N.W.2d 552 (Ct.App. 1973); Eno v. Burlington, 125 Vt. 8, 209 A.2d 499 (Sup.Ct. 1965); Lacy v. Des Moines, 253 Iowa 621, 113 N.W.2d 279 (Sup.Ct. 1962); Annotation, "Validity and construction of statute or ordinance providing for repair or destruction of residential building by public authorities at owner's expense," 43 A.L.R.3d 916 (1972).
In Brown v. Tobriner, supra, the Court of Appeals held that the District of Columbia was entitled to reimbursement from the landowners for all expenses incurred in removing a building declared so unsafe as to require immediate demolition when the owners, after proper notice, failed to take any action.
The Supreme Court of Mississippi has said, in Bond v. Moss Point, supra:
It is a sensible and reasonable rule that where the property owner, after reasonable notice ... fails and refuses to either repair or remove an unsafe and unfit building that constitutes a public nuisance, that the municipality can remove it at the owner's expense. Otherwise the property owner could enjoy the profits from his building during its useful life and then neglect or abandon it in its old age and demand that the municipality, at the expense of all taxpayers, compensate him for it or remove it and clear his property so that he could show his land to its best advantage. [240 So.2d at 273; emphasis supplied].
N.J.S.A. 40:48-1(15) provides that when a municipality demolishes a building which constitutes a public nuisance, it may enforce an ordinance assessing the cost thereof as a municipal lien against the premises. R.O.P. 5:2 35 permits the City of Paterson to cause a structure to be made secure or taken down in the public interest "at the expense of the owner or party in interest."[1] Hence, prior to the adoption of N.J.S.A. 40:48 1.1 the city's right to reimbursement would have been limited to the imposition of a lien on the effected premises. However, under N.J.S.A. 40:48-1.1, the city is no longer so restricted and it may seek to collect the demolition costs as a personal debt of the owner.
*187 There is no constitutional impediment to making a landowner personally responsible for the reasonable cost of abating hazardous conditions existing on his property. In Apartment House Council v. Ridgefield, 123 N.J. Super. 87 (Law.Div. 1973), aff'd o.b. 128 N.J. Super. 192 (App.Div. 1974), the court upheld the constitutionality of an ordinance requiring multiple-dwelling owners to post security to a fund created by the Multiple Dwelling Emergency Commission which was used to repair apartments where the landowner after 24 hours' notice had failed to correct defective emergency conditions.
A New York case, Buffalo v. Dankner, supra, is similar to the one at bar. The issue was whether the City of Buffalo could pursue an action against a property owner to recover a personal money judgment for the costs incurred in demolishing a fire-damaged structure. The defendant argued that the city was barred from collecting a personal judgment against him because city ordinances mandated that the only form of reimbursement would be an assessment levied against the land. The Appellate Division disagreed, holding that cities had to be free to deal with owners of blighted buildings in an effective manner. The threat of personal liability could serve as a formidable deterrent to property owners who would merely collect insurance proceeds after a fire and then abandon their property for the city to take over.[2] The value of the land on which a structure is demolished, particularly in the urban core areas, is often so low that restricting the right to recover the demolition costs to foreclosure sales would be unrealistic.
*188 The problem which the court in Dankner foresaw has now surfaced in the present case. In the numerous cases supporting the municipality's right to reimbursement, underlying each case was the belief that a municipality is entitled to recoup the entire cost it incurs in abating the nuisance on the owner's property whether through a lien or personal judgment. E.g., Boone Cty. Health Bd. v. Wood, 243 N.W.2d 862, 866 (Iowa Sup.Ct. 1976). In the instant case it has been stipulated that the cost of demolishing the structure on the premises in question exceeded the value of the land after the demolition. If the City of Paterson's right to reimbursement were limited to the imposition of a lien on the affected property, it could never recover the full cost of the demolition. Logic militates against the notion that someone would pay more to purchase a parcel of land than the land itself is worth. This point was emphasized in Chicago v. Nielsen, supra, wherein the Illinois Appellate Court recognized that should the city be unable to recover the demolition costs, the city's ability to fulfill its duty to abate hazardous nuisances would be severely hampered, the city's financial condition serving as a constraint.[3] The court said:
It is common knowledge that in many instances the value of the land itself may not be sufficient to enable recovery by the City of the cost of demolition. In such cases, if the City were obliged to advance the money for each and every *189 wrecking operation, attempted recovery of such outlay merely by a lien upon the vacant land would be futile. Therefore, the stilted and unnatural that the City itself retain the services of a wrecker and then attempt collection of the cost from the owner imposes a useless circuity upon the process of ridding the inhabitants of the City of an obnoxious and dangerous condition. [349 N.E.2d at 538].
Nevertheless, defendants argue that if a personal judgment is entered against them in an amount greater than the value of the affected property, the extraction of this excess would be an unconstitutional deprivation of property for public use without just compensation. An attempt is made to analogize the municipality's right to reimbursement under N.J.S.A. 40:48 1.1 to the levying of a special assessment for a public improvement. Defendants cite the case of McNally v. Teaneck Tp., 132 N.J. Super. 442 (Law Div. 1975), aff'd in part, rev'd in part 75 N.J. 33 (1977), for the proposition that if the cost of demolition exceeds the enhancement value of the property, the amount of the assessment cannot exceed the enhancement value and the municipality must itself pay the difference. 132 N.J. Super. at 452.
However, this analogy distorts the issue. The McNally case involved special assessments imposed on certain single-family residential properties to pay for part of the costs incurred in improving the streets upon which these homes abutted. These improvements included sewer and curb repair and new street paving. Such assessments were made pursuant to N.J.S.A. 40:56-1 et seq. and are required by statute to be made "as nearly as may be in proportion to and not in excess of the peculiar benefit, advantage or increase in value ..." N.J.S.A. 40:56-27. Cf. N.J.S.A. 40:56-24. As the Supreme Court pointed out in McNally, the special assessment is a means of reimbursing a municipality for a capital expenditure which was specially advantageous to certain properties within these explicit statutory guidelines. 75 N.J. at 43-44.
*190 In contrast, the present case does not involve improvements particularly benefitting certain properties. This demolition was not motivated by a desire to benefit the owner upon whose property remained the burned hulk of a building. Rather the city sought to protect the general populace whose health and safety was placed in jeopardy so long as this structure was left standing. As an incident to the razing of the building, defendants were unquestionably enriched; however, the city's right to reimbursement should not be limited to the extent of the owner's benefit.
The city's demolition of defendants' building was an act compelled by necessity and one which the city was duty-bound to perform. E.g., Ajamian, supra. The statutory limits under N.J.S.A. 40:56-1 et seq. apply to the discretionary acts of municipalities in making local improvements. Such limits restrain a municipality from charging a property owner the full cost of an improvement which may be either unnecessary or not desired by certain owners. Hence enhancement value is a logical limit to the assessments. Yet when a nuisance exists, threatening the public at large, it is the owner's responsibility to abate it, and in the event he fails to do so, the city must act. Ajamian v. North Bergen Tp., supra. Under these circumstances, the city should not be precluded from total indemnification. Otherwise, as the court in Bond v. Moss Point, supra, pointed out, the city would be doing that which is the responsibility of the property owner at full cost, yet only able to recover the value of the benefit to that recalcitrant individual. Thus, if the city's right to reimbursement is limited as the defendants suggest, the property owner who ignores his duty to maintain his property in a safe condition would profit from his own defiance. Clearly, such a result is not warranted and the imposition of a lien against the property or a personal judgment against the property owner for the full, reasonable cost of the demolition would not violate fundamental constitutional principles.
*191 The validity and constitutionality of a statute is presumed and the burden is on the party challenging it to prove otherwise. Ballou v. State, 148 N.J. Super. 112, 121 122 (App.Div. 1977), aff'd 75 N.J. 365 (1978); Jamouneau v. Harner, 16 N.J. 500, 515 (1954), cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955). Such an enactment will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt. Brunetti v. New Milford, 68 N.J. 576, 599 (1975); Harvey v. Essex Cty. Freeholders Bd., 30 N.J. 381, 388 (1959). Moreover, this court is cognizant of the better practice in presuming an act to be constitutional until it has been passed upon by an appellate court. Shanley v. Nuzzo, 160 N.J. Super. 436, 439-440 (J. & D.R.Ct. 1978); Three L Corp. v. Newark Bd. of Adj., 118 N.J. Super. 453, 455 (Law Div. 1972). Since N.J.S.A. 40:48-1.1 was reasonably adopted to assist municipalities in dealing with the financial burden of demolishing structures constituting public nuisances, defendants have failed to sustain their heavy burden, and thus N.J.S.A. 40:48 1.1 is constitutional.
The following stipulations were made as to the two defendants. Fargo and Rehab are New Jersey corporations. The registered agent for each corporation is Meyer Lobsenz, whose office is located at 250 Van Houten Street, Paterson. Fargo is owned by a partnership consisting of Meyer Lobsenz and Doris Lobsenz. As to the ownership of Rehab, Meyer Lobsenz owns one share, Doris Lobsenz owns one share and Theodore Lobsenz owns the remaining two shares.
Defendant Fargo argues that the lien had not ripened until February 5, 1979, when all conditions for imposition of the lien had finally taken place.[4] As of that date Fargo had not been *192 the owner of the property in question for three months. Thus, Fargo concludes that the city's right to recover, if any, must lie against the owner at the time the lien ripened (i.e., Rehab).
Rehab contends that it did not have sufficient notice of the city's directive to demolish since it had been addressed to Fargo only. Nevertheless, it is undisputed that on November 8, 1978 the subject property was conveyed by deed from Fargo to Rehab  the exact same day on which the City of Paterson's telegram containing the demolition notice was received by the common registered agent at 250 Van Houten Street, Paterson.[5]
Under N.J.S.A. 14A:4-2(2), whenever notice is required to be given to a domestic corporation, that notice may be sent to the registered office of the corporation in New Jersey. Here, the city's notice was received at the common registered office of the defendants albeit addressed to Fargo. Fargo had notice of the city's determination that the premises had to be demolished.
The next question that arises is whether Rehab had sufficient notice. The well-established rule is that when knowledge is acquired by the officers or agent of one corporation while acting on behalf of another corporation, this knowledge will not be imputed to the former corporation. Montclair B. & L. Ass'n v. Miller, 93 N.J. Eq. 653, 655 (E. & A. 1922). However, there is an exception to this general rule when the corporations involved are close corporations. State v. Graziani, 60 N.J. Super. *193 1, 17 (App.Div. 1959), aff'd 31 N.J. 538 (1960), cert. den. 363 U.S. 830, 80 S.Ct. 1601, 4 L.Ed.2d 1524 (1960). In analyzing whether notice given to one corporate entity is sufficient as to another corporate entity, "[t]he court must pierce a multiplicity of formalities and relationships to determine whether the particular corporate form is a shield behind which injustice is sought to be done by those who control the corporation." Magyar v. American Tel. & Tel. Co., 88 N.J. Super. 18, 24 (Law Div. 1965).
In this case it cannot be controverted that Fargo had notice of the city's action, yet failed to do anything in response. Fargo as a corporate entity cannot itself have knowledge; it could only acquire such knowledge through its agents, officers, or owners. Hercules Powder Co. v. Nieratko, 113 N.J.L. 195, 199 (Sup.Ct. 1934), aff'd 114 N.J.L. 254 (E. & A. 1935). The ownership of Fargo rests totally in Meyer and Doris Lobsenz, with Meyer Lobsenz being its registered agent. Rehab is owned by Meyer, Doris and Theodore Lobsenz. Its registered agent is also Meyer Lobsenz. The peculiar circumstances of the transaction and the relationship between the two close corporations involved compels the court to the conclusion that both Fargo and Rehab had notice of the city's declaration that the premises constituted a nuisance and that neither did anything whatsoever once it had received such knowledge.
By their inactivity, the defendants permitted the nuisance to continue, thereby casting the burden on the city to abate this nuisance. Thus a sufficient basis exists to hold both Fargo and Rehab liable for the entire cost of the demolition.
It would be contrary to the principles of equity to conclude, under these particular facts, that the city cannot recover its expenses because the costs of the demolition may not be capable of apportionment between the defendants. Since their failure *194 to abate the nuisance was mutual, defendants' liability should likewise be mutual. See Boone Cty. Health Bd. v. Wood, supra.
Judgment will be entered in favor of the City of Paterson and against defendants Fargo Realty Inc. and Rehab Realty, Inc. for the stipulated amount of $1,625 together with interest and costs.
NOTES
[1] The power to impose the cost of demolition as a lien on the property must be granted by specific legislation since there is no inherent power in the courts to assess the same. Lacey Tp. v. Mahr, 119 N.J. Super. 135, 138 (App.Div. 1972).
[2] The Legislature, recognizing this problem, adopted N.J.S.A. 17:36-8 et seq., as amended by L. 1979, c. 369, which requires payment to the municipality of all liens against the property before disbursement of the fire insurance proceeds to the property owner.
[3] In Thornton v. Chase, 175 Misc. 748, 23 N.Y.S.2d 735 (Sup.Ct. 1940), the City of New York demolished a dangerous structure and assessed the cost as a lien on the premises. Under the city's Administrative Code this lien was entitled to priority over plaintiff's previous mortgage. The court, in upholding the city's priority, said:

It is clear that the priority of the lien provision is a concomitant of the measure which enables the City to proceed against unsafe or dangerous buildings, and as aptly stated by the learned Corporation Counsel, it provides the arm of the City's police power with strong sinew. To aid the City in its work of furnishing the salutary and essential protection prescribed by the statute, the prior lien provision therein must be upheld.' [23 N.Y.S.2d at 739]
[4] In addition to the demolition itself, Fargo argues that the other necessary conditions were that the cost of the demolition had to be ascertained with certainty and the responsible city official had to certify this information to the tax collector.

However, in Application of Barkin, 189 Misc. 358, 71 N.Y.S.2d 267 (Sup.Ct. 1947), a lien for the abatement of a nuisance was held valid as to an owner who acquired title before notice of the lien was filed but after the nuisance had been abated by the city.
[5] At the hearing on the cross-motions for summary judgment, the parties agreed it would be impossible to determine, even with testimony, whether the city's notice was received prior to or after the Fargo-Rehab conveyance.