CITY OF BUFFALO, Respondent, v SARAH R. DANKNER, as Administratrix of the Estate of HYMAN N. DANKNER, Deceased, Appellant.

Fourth Department, July 10, 1975

*Joseph May* for appellant.

*Leslie F. Foshio, Corporation Counsel (John P. Egan* of counsel), for respondent.

MOULE, J. The question presented on this appeal is whether the City of Buffalo may pursue an action against the owner of a blighted structure which it caused to be demolished to recover a personal money judgment for the cost of demolition.

Defendant was the owner of improved property at 328 Adams Street in the City of Buffalo which, kindled by an incendiary device, was destroyed by fire on August 18, 1971. On April 7, 1972 the city caused what remained of the structure to be demolished at a cost of $1,893 and on March 12, 1973 brought an action in the City Court of Buffalo to recover its expenditure. Summary judgment was awarded the city on April 5, 1974 and defendant appealed to the Erie County Court. On January 6, 1975 the Erie County Court affirmed the City Court judgment and defendant has again appealed.

It is defendant's position that the city is barred from collecting a personal money judgment against him because section 20 (subd 35, par g) of the General City Law mandates that the cost of city demolition projects be levied as an assessment against the land. We disagree.

Subdivision 35 of section 20 of the General City Law, enacted in 1965, authorizes cities to adopt local laws or ordinances compelling the repair or removal of structures endangering public health, safety or welfare. It provides direct legislative authority for cities to demolish such structures. By paragraph g of subdivision 35 it provides for the assessment of all costs and expenses incurred by the city to be levied against the land on which the structure is located.

Paragraph h of subdivision 35, however, provides that the powers conferred upon cities with respect to such demolition projects are in addition to other powers previously conferred with respect to the same subject matter and further states that "[n]othing contained in this subdivision shall be construed to amend, repeal, modify or affect any existing local law or ordinance or provision of any charter or administrative code pertaining to the subject matter to which this subdivision

relates, or to limit or restrict the power of any city to amend or modify any such existing local law, ordinance or provision of any charter or administrative code, or to restrict or limit any power otherwise conferred on any city by law with respect to the subject matter to which this subdivision relates."

The Buffalo City Charter, enacted in 1927, contains a provision dealing with the demolition of unsafe or dangerous structures. In subdivision (10) of section 10 of article 2 of the charter, it is provided that the city is empowered to recover the cost of demolishing such unsafe or dangerous structures *"either by action or by local assessment* on the premises, made, levied and collected as other local assessments under this act" (Local Laws, 1927, No. 4 [published in Local Laws, 1932, p 21]; emphasis supplied). Section 538 of the charter states that all local assessments shall be liens against the property to the same extent as taxes and the same remedies and methods of collection shall apply to each. Section 326 of the charter permits the city to recover every tax by action from the persons liable to pay.

In 1966, one year after the enactment of subdivision 35 of section 20 of the General City Law, the city adopted an ordinance aimed at implementing subdivision (10) of section 10 of its charter by expressly providing that it would thereafter seek to recover demolition costs directly from the owners of blighted structures as a supplement to assessing the cost against the land.

Defendant contends, however, that irrespective of the provisions of subdivision (10) of section 10 of the city charter or of the ordinance enacted implementing it, a specific procedure for dealing with blighted structures is mandated by charter article 10-A, and section 196 of article 10-A provides that the cost of demolition be recovered as in a foreclosure against the property, with no deficiency judgment being permitted. If this were so subdivision (10) of section 10 of article 2 would have no meaning. In order to reconcile the two enactments and to harmonize the general scheme of the charter, we must infer that the Legislature intended that the city have alternative means at its disposal for dealing with the problem of blight. Where the value of a particular parcel of property earmarked for condemnation is sufficient to defray the entire cost of the work, a proceeding under article 10-A of the charter may be commenced, but where the value of such property would be

insufficient to cover the city's expense if foreclosed the options of collection by assessment or by direct action against the owner, as provided under article 2, have been provided.

Since subdivision 35 of section 20 of the General City Law is by its terms a supplemental rather than a restrictive statute and specifically allows for the saving of prior charter provisions, and since the city's charter under subdivision (10) of section 10 of article 2 previously provided for a more pervasive demolition cost collection method than does the statute, it follows that the city's 1966 ordinance, being consistent with its charter powers, does not contravene any State law.

*Yax v Town of Evans* (41 AD2d 232), relied upon by appellant, is not in point. That case involved the application of section 130 of the Town Law which, while similar in many respects to subdivision 35 of section 20 of the General City Law, contained no provision saving prior local legislative enactments.

There is substantial reason why the Legislature should believe that cities must be free to deal with the owners of blighted buildings in an effective manner. Especially in urban core areas, the value of the land on which a structure is demolished is often so low that restricting the demolition authority to recovery of its costs by selling it in foreclosure would be unrealistic. By the time the expenses of such a procedure are deducted from any revenues that might be realized there would, in many cases, be little left to defray the wrecking costs. While this is generally true in cities, it may not be true in less densely populated areas where land values are higher, which may explain why the Town Law lacks the savings provision of the General City Law regarding existing local legislation. Moreover, the threat of personal liability in itself can serve as a formidable deterrent to property owners who merely collect insurance proceeds after a fire and abandon their building and land for the city to take over.

The city in its brief asserted that defendant's appeal is not properly before this court, citing *Serrino v D & B Barr Inc.* (37 AD2d 912). In that case the appeal was from an order of County Court affirming an order of City Court. As such, there was no final adjudication in the court of first instance and it was for that reason that the appeal in *Serrino* was dismissed. However, here, defendant's appeal is properly before us. CPLR 5703 (subd [b]) provides that a party may appeal to the Appellate Division as of right from an order of a County Court

or Special Term of the Supreme Court which determines an appeal from a judgment of a lower court.

The order of the Erie County Court should be affirmed.

MARSH, P. J., MAHONEY, DEL VECCHIO and WITMER, JJ., concur.

Order unanimously affirmed with costs.