DAVID C. YOUNG, as Director of the Division of Buildings and Property Rehabilitation of the City of Syracuse, Respondent, v AHLEEN ENGELSTEIN, as Executrix of DAVID ENGELSTEIN Deceased, et al., Appellants.

Fourth Department, April 8, 1980

1

**APPEARANCES OF COUNSEL**

*Donald J. Ball* for Ahleen Engelstein, appellant.

*David M. Garber, Corporation Counsel (James L. Gelormini* of counsel), for respondent

## OPINION OF THE COURT

CARDAMONE, J. P.

The issue before us is who is to bear the expense of demolishing a fire-damaged two-story brick building in a blighted area of Syracuse, New York. On October 21, 1978 the unoccupied and uninsured building was extensively damaged by fire. Two days later the respondent City of Syracuse declared that it was an immediate danger to the health, safety and welfare of the public and issued an emergency order for its demolition. Because property taxes had not been paid since 1971, the city sold the property annually at its tax sales. Each year the city has bid the property in on its own behalf and taken a tax sale certificate. But since it has never taken title by deed from the Commissioner of Finance or otherwise, however, the city asserts that responsibility for demolition rests on the estate of the owner. Appellant, Ahleen Engelstein, executrix of the estate of David Engelstein, urges that inasmuch as the statutory period of redemption for the years 1971-1975 had expired at the time this proceeding was instituted, the estate of the decedent should no longer be considered the owner. The appellant argues that since the city is the holder of tax sale certificates on the property for which the statutory period of redemption has expired, the city is, in effect, the owner and should pay the cost of demolition.

This appeal is from an order at Special Term which affirmed an administrative order of the Department of Community Development for the City of Syracuse which directed appellant to demolish the building which is located at 900-904 South Salina Street. The order at Special Term also denied appellant's motion to join the Syracuse Commissioner of Finance as a necessary party respondent in the proceeding.

The issue to be decided must be analyzed within the framework of the specific provisions of the Syracuse Tax Act (L 1906, ch 75, as amd). Section 22 of that act (as amd by L 1958, ch 641, § 1), states in pertinent part: "If any such tax sale or certificate shall not have been redeemed prior to the expiration of the period of redemption the commissioner of finance, or his successor in office, shall issue to the city of Syracuse a deed or deeds for all of the lands described therein remaining unredeemed, or such commissioner, or his successor in office, shall institute proceedings in the name of the city of Syracuse to foreclose the lien of said taxes upon said real estate pursuant to the provisions of section forty-four of this

act". At the root of its affirmance of the administrative order is Special Term's conclusion that the word "shall" in the above-quoted section of the Syracuse Tax Act is not mandatory but merely directory. We disagree with that interpretation of the statutory language as used in this tax act. It follows, therefore, that we arrive at a conclusion different from that reached at Special Term, i.e., the city, not the estate of the owner, must bear the expense of demolition for this vacant building.

The General City Law provides for charging an owner with the expense of repair or removal of any building. That statute authorizes a city to adopt a local law or ordinance compelling the repair or removal of any building or structure that, from any cause, endangers the health, safety or welfare of the public (General City Law, § 20, subd 35). If the owner refuses to comply with the order of repair or removal, the city may raze the dangerous structure itself and recover the cost of demolition either as an assessment against the land or in a direct action against the owner (Lane v City of Mount Vernon, 38 NY2d 344; City of Buffalo v Dankner, 48 AD2d 572, app dsmd 38 NY2d 826). The City of Syracuse provided a procedure in its housing code whereby the owner of a hazardous building may be ordered to repair or demolish the structure (Housing Code of City of Syracuse, § 27-116). If the owner refuses to comply with the order the city may undertake the repair or demolition and charge the expense so incurred to the "person[s] responsible for such violation" (Housing Code of City of Syracuse, § 27-117). Our construction of the Syracuse Tax Act compels us to conclude that the city is the owner of the premises at 900-904 South Salina Street.

We begin with the observation that the interest created in favor of the holder of a tax sale certificate (here the respondent city) must depend on the particular statute (cf. Mabie v Fuller, 255 NY 194). It is a general rule that the purchaser of property at a tax sale has a right to conveyance which matures upon expiration of the redemption period (see Terrel v Wheeler, 123 NY 76, 84; Matter of Blatnicky v Ciancimino, 1 AD2d 383, 388-389, affd 2 NY2d 943). The same is true of the Syracuse Tax Act. Section 21 of that act directs the city treasurer after property taxes are in arrears for a certain period to "sell such real estate * * * for the payment of such taxes, fees, interest and expenses". Section 22 directs the commissioner of finance of the city on the day of the sale to

"commence the sale of said real estate" and to "continue such sale from day to day until the whole thereof shall be sold" (L 1906, ch 75, as amd by L 1958, ch 641, § 1). The commissioner is further directed "to bid in for the city all parcels of real estate at such sale at a rate sufficient to pay the taxes for which the land is to be sold with all accrued interest, additions, charges, fees and expenses". And section 22 further provides that "[t]he commissioner of finance shall make certificates of sale for all lands so bid in by him for the city describing the lands purchased and specifying the time when a deed therefor can be obtained. Such purchases shall be subject to the same right of redemption as herein provided and if the land so sold shall not be redeemed the commissioner of finance's deed thereof shall have the same effect and become absolute as herein provided". Under section 24 the owner of the property may redeem a tax sale certificate "within two years after the last date of such sale".

A tax sale certificate held by the city which is not redeemed within this period is governed by the quoted provisions of section 22 which provide that if any such tax certificate shall not have been redeemed prior to the expiration of the period of redemption the commissioner of finance *"shall"* issue to the City of Syracuse a deed for property remaining unredeemed, or *"shall"* institute foreclosure proceedings. The effect of construing the word "shall" as permissive would be to allow the city to postpone indefinitely the perfection of title in itself when the current titleholder has refused to redeem any of the tax sale certificates and has expressed no willingness to pay future taxes assessed against the property. Language peremptory in form should be given a peremptory meaning unless it is evident from the entire act construed as a whole and from the surrounding circumstances that such language was intended to be construed as directory only (McKinney's Cons Laws of NY, Book 1, Statutes, Construction and Interpretation, § 177, subd c). The plain meaning of the above language is to ensure that the city will act expeditiously upon expiration of the redemption period to take a tax deed and sell the property or to clear title by foreclosure proceedings. The purpose, of course, is to recoup as much of the unpaid taxes as possible and return the property to a tax-producing status on the city's assessment rolls (24 Opns St Comp, 1968, p 958). The construction that respondent urges that we place on this provision would be inconsistent with this purpose and would

permit the property to remain an indefinite drag on the public fisc.

Since the objective of real property taxation is to raise the revenue needed by a municipality to provide services to the community, the dominant concern upon repeated delinquency by a taxpayer is to protect the existing tax base. One way that this is accomplished is through periodic tax sales which vest title in stronger financial hands as soon as possible (see Godfrey, Enforcement of Delinquent Property Taxes in New York, 24 Albany L Rev 271, 272). The two-year period of redemption provided under the Syracuse Tax Act is to protect the delinquent taxpayer's interest in his real estate investment while providing the city with a date to cut off the tax delinquent owner's interest, after which it can convey absolute title to another. The language of section 22 of the act is an expression that the city's genuine interest in future tax revenues becomes paramount over the delinquent taxpayer's interest in his property upon expiration of the redemption period. To the extent that the city is allowed unilaterally to delay perfecting title in its name, or clearing title in the case of foreclosure, the property is effectively removed from the tax base, which perpetuates the continued loss of tax revenue. Inaction by the city increases the financial burden not only on itself, but also on those property owners who pay their taxes and who must then bear a heavier share of the cost of maintaining essential municipal services. Municipal inaction also causes an increase in urban blight. Since tax delinquent property is usually neglected by its owner, it tends to deteriorate providing a focus for further blight to develop, which if permitted to continue unchecked tends to depreciate an entire area's property values (Godfrey, Enforcement of Delinquent Property Taxes in New York, 24 Albany L Rev 278-279; see, also, Tax Titles in New York State, 8 Brooklyn L Rev 61-80 [1938]).

Respondent contends that section 47-a of the Syracuse Tax Act (added by Local Laws, 1937, No. 5 of City of Syracuse, § 1) is evidence that the above-noted provision in section 22 was not intended to be mandatory. Section 47-a permits the city to enter into an installment agreement with a delinquent taxpayer for the payment of unpaid taxes, provided that the tax sale certificate has remained unredeemed for a period of "not less than three years". The three-year period specified, admittedly, is inconsistent with the two-year statutory period of

redemption. However, it is evident from the express terms of section 47-a that the waiver of the redemption period allowed by this provision is intended to operate only upon the initiative of the taxpayer; and then, only in the event that the taxpayer agrees to pay *all* current and future taxes as they become due. This provision could not have been intended to confer upon the commissioner of finance the power to avoid perfecting title in the city where the city has repeatedly purchased the property at tax sales and the record owner has repeatedly declined to redeem the certificates.

The city now possesses all of the indicia of true ownership of the property as against the estate by reason of the expiration of the redemption period. By its purchase at public sale of the tax sale certificates for this parcel annually from 1971 to 1977, the city took an inchoate interest in this tax delinquent property *(Canino v Engelstein,* 43 NY2d 922). According to the Syracuse Tax Act the purchaser of a tax certificate may "lawfully possess, hold and enjoy for his * * * proper use and benefit * * * the real estate described in said certificate, unless the same shall be redeemed as hereinafter provided; and he and his heirs and assigns may at any time after the expiration of the time to redeem such premises, if the same shall not have been redeemed as hereinafter provided, cause the occupant of such real estate to be removed therefrom, and the possession thereof to be delivered to him, in the same manner, and by the same proceedings by and before the same officers as in the case of a tenant holding over after the expiration of his term, without permission of his landlord" (Syracuse Tax Act, § 23). Thus, at the expiration of the redemption period the city acquired all the rights of ownership in fee simple and the appellant owner's rights were reduced to those of a mere tenant-at-sufferance. The mere fact that the city failed to perform the ministerial act of conveyance does not preclude a determination that it is the owner. Since the city has the absolute legal right at any time in the future to issue a tax deed to itself, no right of ownership may be claimed to be retained by the Engelstein estate.

Our previous determination in *City of Buffalo v Dankner* (48 AD2d 572, *supra)* is not apposite since there we were dealing with the power of the city under section 20 (subd 35, par g) of the General City Law and not with the question of ownership of blighted property. Similarly, we believe respondent's reliance upon *Matter of County of Nassau (Gelb-Siegel)* (24 NY2d

621) is misplaced inasmuch as in that case a period of redemption remained at the time the municipality acquired its interest in the property.

Finally, in view of this analysis the Commissioner of Finance of the City of Syracuse is a necessary party (CPLR 1001, subd [a]) in order for appellant to compel the commissioner either to issue a tax deed to the city or to commence foreclosure proceedings (Syracuse Tax Act, § 22, as amd by L 1958, ch 641).

The order should be reversed, the motion to confirm should be denied and the motion to add a necessary party should be granted.

HANCOCK, JR., SCHNEPP, DOERR and MOULE, JJ., concur.

Order unanimously reversed, with costs, motion to confirm denied and motion to add party granted.